1
2
3
4
5

MICHAEL MALK, ESQ., APC
Michael Malk, Esq., (State Bar No. 222366)
1180 South Beverly Drive, Suite 302
Los Angeles, California 90035
Telephone: (310) 203-0016
Facsimile:  (310) 499-5210
mm@malklawfirm.com

6
7

Attorneys for Plaintiff Adam Goodwin
and all others similarly situated

8
9
10

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

11
12

ADAM GOODWIN, on behalf of
himself and others similarly situated,

13

Plaintiff,

14

v.

15
16
17
18

WINN MANAGEMENT GROUP
LLC., a Massachusetts Limited
Liability Company , and
DOES 1 THROUGH 100, inclusive

19

Defendants.

Case No. 1:15-cv-00606-DAD-EPG

**NOTICE OF MOTION AND
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL**

Judge:  Hon. Dale A. Drozd
Date:   December 6, 2016
Time:   9:30 a.m.
Ctrm:   5

20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL SUMMARY ......................................................... 2

    A.    Plaintiff's Claims ........................................................ 2

    B.    Defendant Denies Plaintiff's Claims. ................................. 3

    C.    Procedural History ...................................................... 3

    D.    Marshaling of Evidence and Damages Model ........................ 4

    E.    Settlement Negotiations ................................................ 5

    F.    Summary of Settlement Terms ........................................ 6

III.  RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET ............... 7

    A.    Rule 23(a)(1) Numerosity .............................................. 8

    B.    Rule 23(a)(2) Commonality ............................................ 8

    C.    Rule 23(a)(3) Typicality ............................................... 9

    D.    Rule 23(a)(4) Adequacy .............................................. 10

    E.    Rule 23(b)(3) Predominance .......................................... 10

    F.    Rule 23(b) Class Action is Superior ................................. 11

IV.   PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ............ 11

    A.    Settlement Agreement is Within the Range of Possible Approval ......... 13

    B.    Settlement Was the Product of Informed, Non-Collusive Negotiations ........ 14

    C.    The Settlement Agreement Contains No Obvious Deficiencies ............ 15

V.    APPROVAL OF CLASS NOTICE AND RELATED FORMS ................... 18

    A.    Administration of Notice, Objections and Claims ................... 18

    B.    The Court Shall Direct Distribution of the Notice of Settlement ........... 19

    C.    The Proposed Class Notice and Claims Process Are Appropriate ........ 20

    D.    The Court Should Set A Final Approval Hearing ................... 21

VI.   CONCLUSION ................................................................ 21

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

1

# <u>TABLE OF AUTHORITIES</u>

2

3
## <u>CASES</u>

4
*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................................... 10

5

*Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879 (E.D.Cal.) ............................ 16

6

*Boring v. Bed Bath and Beyond of Cal. Ltd. Liab. Co.*, 2013 WL 6145706 (N.D. Cal.) ............... 16

7

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) ....................................................... 13

8

*Eisen v. Carlisle & Jacqueline,* 417 U.S. 156 (1974) ................................................... 19

9

*Franco v. Ruiz Food Prods.*, 2012 U.S. Dist. LEXIS 169057 (E.D. Cal.) ....................... 8

10

*General Tel. Co. v. Falcon,*
    457 U.S. 147 (1982) ........................................................................................... 10

11

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal.) ............................ 13

12

*Hanlon v. Chrysler Corporation,*
    150 F.3d 1011 (9th Cir. 1998) ....................................................... 8, 9, 10, 11

13

14
*Ikonen v. Hartz Mountain Corp.,*
    122 F.R.D. 258 (S.D.Cal. 1988) ........................................................................ 8

15

*In re Bluetooth Headset Products Liability Litigation,*
    654 F.3d 935 (9th Cir. 2011) ............................................................................ 12

16

17
*In re Lorazepam & Clorazepate Antitrust Lit.,*
    202 F.R.D. 12 (D.D.C. 2001) ........................................................................... 11

18

19
*In re Tableware Antitrust Litig.,*
    484 F.Supp.2d 1078 (N.D.Cal. 2007) ....................................................... 12, 13

20

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) .................... 8

21

*Martin v. FedEx Ground Package System, Inc.,*
    2008 WL 5478576 (N.D.Cal.) ......................................................................... 18

22

23
*Mendoza v. Tucson School Dist. No. 1,*
    623 F.2d 1338 (9th Cir. 1980) .......................................................................... 20

24

*Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) ....................................... 17

25

*Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ........................ 8

26

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............... 13

27

28

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

*Ortega v. J.B. Hunt Transport, Inc.*,
   258 F.R.D. 361 (2009) ..................................................................... 11

*Paul, Johnson, et al. v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .......................................................... 16

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2003) ................................................. 8

*Romero v. Producers Dairy Foods, Inc.*,
   2007 WL 3492841 (E.D.Cal.) ......................................................... 18

*Singer v. Becton Dickinson and Co.*,
   2010 WL 2196104 (S.D.Cal.) ......................................................... 18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 1993) .......................................................... 16

*U.S. v. Truckee-Carson Irrigation Dist.*,
   71 F.R.D. 10 (D.Nev. 1975).............................................................. 19

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F.Supp.2d 1114 (E.D.Cal. 2009).......................................... 12, 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2003) ....................................................... 17

## STATUTES

29 U.S.C. §201 ................................................................................................ 2

Cal. Bus. & Prof. Code §17200 ................................................................. 2, 9

Cal. Labor Code § 1194 ................................................................................ 2

Cal. Labor Code §§ 201-203.................................................................. 2, 9, 14

Cal. Labor Code § 226 .......................................................................... 2, 9, 14

Cal. Labor Code § 226.3 .............................................................................. 2

Cal. Labor Code § 520 ................................................................................. 2

California Labor Code Private Attorneys General Act of 2004 ("PAGA") ............................... 2, 14

Fed. R. Civ. P. 23 ................................................................................ passim

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

**NOTICE IS HEREBY GIVEN** that, on December 6, 2016, at 9:30 a.m. in Courtroom 5 of the United States District Court for the Eastern District of California before the Honorable Judge Dale A. Drozd, pursuant to Fed. R. Civ. P. 23(e), Plaintiff Adam Goodwin ("Plaintiff") on behalf of himself and all others similarly situated, will and does hereby move this Court for entry of an Order:

1.   Preliminarily certifying the class for purposes of settlement only;

2.   Preliminarily appointing Plaintiff as Class Representative for purposes of settlement only;

3.   Preliminarily appointing Michael Malk, Esq. of Michael Malk, Esq., APC, as Class Counsel for purposes of settlement only;

4.   Preliminarily approving the settlement as fair, adequate, and reasonable, based upon the terms set forth in the parties' Class Action Settlement Agreement and Release of Claims ("Settlement Agreement"), including payment by Winn Management Group, LLC ("Winn" or "Defendant") of the Maximum Settlement Amount ("MSA") of $250,000;

5.   Preliminarily approving an Enhancement Award of $7,500 to Plaintiff in recognition of his service to the Settlement Class;

6.   Preliminarily approving Plaintiff's Counsel's request for up to 1/3 of the MSA as attorneys' fees, plus reimbursement of litigation costs up to $15,000;

7.   Appointing CPT Group, Inc., as the third-party Claims Administrator for mailing notices and for claims administration; and

//
//
//
//
//

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

1        8.      Approving the proposed Class Notice and Claim Form, and ordering they

2   be disseminated to the class as provided in the Settlement Agreement.

3   Dated: November 16, 2016              Respectfully submitted,

4                                        MICHAEL MALK, ESQ., APC

5

6                              By: *Michael Malk*

7                                  Michael Malk, Esq.
                                   Attorneys for Plaintiff and the Settlement Class
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

# I.  <u>INTRODUCTION</u>

Plaintiff Adam Goodwin ("Plaintiff"), on behalf of himself and the putative Settlement Classes,[1] requests that this Court preliminarily approve the parties' proposed Class Action Settlement Agreement and Release of Claims ("Settlement Agreement"),[2] entered into by Plaintiff and Winn Management Group, LLC ("Defendant" or "Winn") during the week of November 14, 2016.

The Settlement Agreement seeks to fully release and discharge Defendant from the claims brought against it in the above-captioned matter (the "Action"[3]) and all related penalties. In exchange, Defendant will pay the Settlement Class up to $250,000 ("Maximum Settlement Amount").

The Settlement Agreement and Notice distribution plan were the products of non-collusive, arm's-length negotiations by informed counsel and parties. The settlement is fair, reasonable and adequate to all. Accordingly, Plaintiff seeks: (1) preliminary approval of the Settlement Agreement; (2) provisional certification of the Settlement Class; (3) appointment of Plaintiff as Class Representative; (4) appointment of Michael Malk, Esq., APC as Class Counsel; (5) approval of the parties' proposed form and

---

[1] The proposed Settlement Classes are defined as:

1. "California Class" refers to all non-exempt employees who worked for Defendant in California and both i) received non-discretionary compensation and ii) worked over 8 hours in a day or 40 hours in a week in at least one pay period between April 16, 2011 through the date of Preliminary Approval.

2. "FLSA Class" refers to all non-exempt employees who worked for Defendant in the United States (except for California) and both i) received non-discretionary compensation and ii) worked over 40 hours in a week in at least one pay period between April 16, 2012 and the date of Preliminary Approval.

[2] The Settlement Agreement and the proposed Class Notice and Claim Form are attached as Exhibit 1 to the Declaration of Michael Malk ("Malk Decl." filed herewith).

[3] All capitalized terms have the same meaning as in the Settlement Agreement.

method of notifying Class Members of the Settlement Agreement; (6) an order scheduling the hearing date for Final Approval of the Class Settlement; and (7) entry of a preliminary approval Order.[4]

## II. FACTUAL SUMMARY

### A. Plaintiff's Claims

Plaintiff alleges that Defendant failed to pay its non-exempt property management workers 1.5 times the regular rate of pay for overtime, *i.e.* it did not include non-discretionary bonuses and commissions in the regular rate of pay when paying overtime to its employees in violation of 29 U.S.C. §201 *et seq*., Cal. Labor Code §§520, 1194, 226, 226.3, 201-203[5]. Plaintiff also asserted claims under Cal. Bus. & Prof. Code §17200 and the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). Specifically, Plaintiff alleges that Defendant improperly paid its employees 1.5 times the *hourly rate* for overtime, omitting inclusion of non-discretionary bonuses and commissions. Winn failed to pay 1.5 times the *regular rate* of pay, *inclusive* of non-

_____

[4] Winn vigorously denies liability or wrongdoing with respect to its overtime policies and practices. Winn reserves its right to assert any and all defenses to the claims asserted by Plaintiff and the putative class. Further, Winn does not oppose this motion to preliminarily approve of the settlement of a lawsuit that was filed as a class action but specifically denies that a settlement was necessary as a result of any action or inaction by Winn. Winn agrees to resolve the claims asserted by Plaintiff on a class basis to avoid incurring additional substantial costs beyond those which have already been incurred as well as the delay and risks that would be presented by further prosecution of the litigation. The proposed Settlement includes a non-admissions clause and Winn has at all times maintained that its overtime policies and practices are fully lawful. Hence, Winn does not join in the substance of the representations made by Plaintiff in this motion and specifically denies the negative characterizations of Winn's conduct as well as Plaintiff's interpretation of certain legal authorities. Winn therefore also reserves its right to clarify any aspect of the motion that it believes needs to be addressed.

[5] Under Labor Code §203, if an employer willfully fails to pay wages due upon discharge or resignation in violation of Labor Code §§201 and 202, the employer is liable for penalties of up to 30 days of additional pay to the former employee.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

discretionary bonuses and commissions resulting from earned monthly bonuses based upon the rental increase when a lease was renewed at Defendants' properties at a higher rate than the rate in the prior rental agreement.

## B. Defendant Denies Plaintiff's Claims

Defendant vigorously denied Plaintiff's allegations. Among other things, Winn maintained that bonuses and commissions were discretionary. Further, Winn contended that it properly calculated and paid all required overtime wages, and did not improperly exclude the value of bonuses and commissions from the regular rate of pay.

With respect to Plaintiff's claim for waiting time penalties, Winn argued that its good-faith belief in the use of its timekeeping and payroll practices precluded the imposition of waiting time penalties since Plaintiff could not prove that Winn's alleged failure to pay all final wages at the time of separation was "willful." For these reasons, Winn claimed that it did not engage in any unfair business practices and denied liability under PAGA. Finally, Winn maintained that Plaintiff's claims were improper for class treatment under Rule 23 of the Federal Rules of Civil Procedure.

## C. Procedural History

On April 17, 2015, Plaintiff Adam Goodwin filed his Original Class Action Complaint in the United States District Court, Eastern District of California, on behalf of himself and others similarly situated. On May 20, 2015, Plaintiff filed a First Amended Complaint, adding a claim for PAGA penalties. Malk Decl., ¶¶ 44-45.

Both parties propounded written discovery.  After several conversations between the attorneys representing the parties, however, the parties agreed to engage in an informal discovery process that culminated in a mediation scheduled for August 16, 2016 with mediator Robert Kaplan, Esq. Malk Decl., at ¶51. Prior to mediation, Plaintiff's Counsel sent Defense Counsel a letter requesting information and documents, and Defendant collated extensive information and provided it to Plaintiff. *Id*. at ¶ 47.

## D. Marshaling of Evidence and Damages Model

Through informal discovery, Plaintiff's counsel has diligently pursued an investigation of the putative Class Members' claims, including reviewing Defendant's response to discovery and document production, reviewing other relevant documents including but not limited to, Plaintiff's personnel file, Plaintiff's payroll summary report, documents pertaining to the type and frequency of bonus, commission and other non-hourly incentive compensation and a list of Defendant's locations applicable to the Action; reviewing the relevant data regarding the size of the putative class inside California versus outside of California; and researching the applicable law and the potential defenses thereto. Malk Decl., at ¶¶ 46-47.

As part of informal discovery prior to mediation, Winn provided actual data of all the bonus, commission and/or incentive compensation data during the Class Periods for the California and FLSA Classes, along with the regular and overtime hours worked applicable to that compensation.  Malk Decl., ¶47.  Additionally, Winn provided the average hourly rates for the putative class members during the Class Periods. *Id.*

Prior to the mediation and thereafter, Plaintiff was able to construct a damages model from the information informally obtained from Defendant.

### 1. California Liability

Regarding the California Class, Plaintiff initially assumed that every California Class member both 1) received a bonus and 2) worked overtime, in every pay period. However, Defendant presented evidence that bonuses were only paid-out 293 times over the penalty period[6] in pay periods where the California Class members worked overtime.

---

[6] The penalty period is April 17, 2014 through the present. However, the Class sustained no damages after March 15, 2016 since Defendant stopped paying the applicable bonus at that time.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

Thus, wage statement penalties were reduced from \$236,000 to \$29,300[7], and the derivative PAGA penalties were reduced as well.

According to Plaintiff's damages model, Winn's maximum exposure, for overtime owed on bonuses and commissions was \$6,426.97.[8] The total maximum exposure, including liquidated damages, interest and penalties, was \$224,227.87.

## 2. Non-California Liability

Regarding the FLSA Class, according to Plaintiff's damages model, Winn's maximum exposure, for overtime owed on bonuses and commissions was \$75,654.53. The total maximum exposure, including liquidated damages and interest, was \$176,387.52.

## 3. Total Liability of the California and FLSA Classes

Plaintiff estimated the total maximum exposure for both the California and FSLA Classes, for overtime owed on bonuses and commissions was \$82,081.50. The total maximum exposure for both the California and FLSA Classes was \$398,160.59, including liquidated damages, interest and penalties (\$121,000.00 of which was waiting-time penalties pursuant to Cal. Labor Code § 203).  This figure assumes a 100% probability of prevailing on the merits and certification. Malk Decl., ¶50.

**E. Settlement Negotiations**

On August 16, 2016 the parties attended an all-day mediation at the offices of

---

[7] I.e., (293 pay periods) x (\$100)

[8] Calculated as:
 (value of bonus/corresponding hours worked) x (0.5) x (weekly OT hours worked).
*See* Division of Labor Standards Enforcement 2002 Enforcement Policies and Interpretations Manual at 49.2.4.1 ("[F]ind the regular bonus rate by dividing the bonus by the total hours worked throughout the period in which the bonus was earned. The employee will be entitled to an additional half of the regular bonus rate for each time and one-half hour worked and to an additional full amount of the bonus rate for each double time hour, if any.").

Robert Kaplan, Esq., in San Diego, California. Malk Decl., ¶51. Attorneys Michael Malk, of the Michael Malk, Esq., APC and settlement consultant Barry Goldstein and Plaintiff attended on behalf of Plaintiff. Attorneys Mark Jacobs and Shaun J. Voigt of Fisher & Phillips, LLP, attended on behalf of Defendant, along with a corporate representative from Winn. *Id.*

After a full day of negotiations, the parties agreed to settle for $250,000 (which will be apportioned 56% to the California Class and 44% to the FLSA Class) with a claims process and **no reversion** to Defendant of any settlement monies, even those unclaimed.[9] Malk Decl., ¶53; Exhibit 1 thereto (Settlement Agreement), ¶V.D. Unclaimed funds from the $250,000 settlement amount, if any, will be re-allocated to the California and FLSA Class Members who participate in the settlement. *Id.*; Settlement Agreement, at ¶¶V.D. (i) and (ii). Thus, a Settlement Class Member's actual settlement payment could and likely will exceed their estimated Settlement Share. *Id.*

**F. Summary of Settlement Terms**

Under the terms of the Settlement Agreement, Defendant is discharged of all claims asserted in the Action ("Released Claims") in exchange for paying the Maximum Settlement Amount ("MSA") of $250,000[10]. From that amount, and subject to court approval, will be subtracted Plaintiff's Enhancement Award of up to $7,500, attorneys' fees to Plaintiff's Counsel of up to $82,500.00 and Plaintiff's Counsel's actual costs of up to $15,000, and payment to the LDWA in the amount of $3,750.00[11]. The Net Settlement Amount ("NSA") is the remainder, *i.e.*, approximately $141,250.00, which shall be available for distribution to Class Members who file timely and valid claims on

---

[9] The parties continued to negotiate until their finalized Settlement Agreement was fully executed during the week of November 14, 2016. Malk Decl., ¶56.

[10] Settlement Agreement, ¶¶ II, N., IX.A.

[11] Settlement Agreement, ¶¶ IX. A. 1-4.

a per work week basis[12].  The average estimated amount per class member, without taking into account any possible upward adjustments, is $112[13].  Malk Decl. ¶52. However, this is a claims-made settlement with undistributed and unclaimed funds, if any, to be re-allocated to the Settlement Class Members who participate in the settlement[14]. Thus, a Settlement Class Member's actual settlement payment could, and likely will, exceed the estimated payment. California Class members who are currently employed by Defendant are not required to file claims to receive a Settlement Share.[15] California Class members who are former employees (other than Plaintiff) and FLSA Class members (except Plaintiff) must complete and return a valid claim form to participate in the settlement.[16]

All Settlement Shares paid to the Final Settlement Class under this Settlement will be issued via check(s) and allocated as follows: (a) for the California Class, forty percent (40%) shall be allocated as wages and sixty percent (60%) shall be allocated as non-wages; and (b) for the FLSA Class, fifty percent (50%) shall be allocated as wages and fifty percent (50%) shall be allocated as non-wages.  Any amounts paid for non-wages shall not be subject to tax withholding.[17]

## III.   RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET

To determine the fairness of any settlement agreement calling for the creation of a settlement class, courts must decide whether the settlement class meets the requirements for class certification. *Hanlon v. Chrysler Corporation,* 150 F.3d, 1029-1120 (9th Cir.

---

[12] Settlement Agreement, ¶¶ II.O., V.D.

[13] $141,250 (net settlement amount) / 1,259 (putative class members) = $112 (average award per class member).

[14] Settlement Agreement, ¶ V.D.

[15] Settlement Agreement, ¶ V.D. (i).

[16] Settlement Agreement, ¶¶ V.C. (ii), V.D. (ii).

[17] Settlement Agreement, ¶ IX.A.6.

1998). Here, the Settlement Class meets all of the requirements set forth in Fed. R. Civ. P. 23.[18] Rule 23(a) sets forth four prerequisites for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Rule 23(b)(3) further provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

## A. Rule 23(a)(1) Numerosity

Numerosity is easily satisfy because there are approximately 1259 (116 in California and 1,143 outside of California) members in the Settlement Classes.[19] *See, Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D.Cal. 1988) (40 members enough).

## B. Rule 23(a)(2) Commonality

The settlement classes satisfies commonality in that all Class Members share, *inter alia,* the following legal and factual questions: (1) whether Plaintiff and Class

---

[18] Judicial approval of an FLSA settlement is also necessary to effectuate a valid and enforceable release of FLSA claims. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). In this regard, pursuant to a private enforcement action under Section 16(b) of the FLSA, such as this one, a district court may approve a settlement reached as a result of contested litigation to resolve a bona fide dispute between the parties. *Id.* at 1354. Thus, the Court should approve the proposed FLSA settlement if it is satisfied that the settlement is the product of contested litigation and determines that the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties over FLSA coverage. *Id.* Because the factors in evaluating a proposed settlement under the FLSA and FRCP Rule 23 assess the same factors, Plaintiffs' analysis of the Rule 23 factors is equally applicable to the settlement of the FLSA claim and Plaintiffs will not repeat them here. *See e.g. Franco v. Ruiz Food Prods.*, 2012 U.S. Dist. LEXIS 169057 (E.D. Cal. 2012); *compare Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468, 477-478 (E.D. Cal. 2010) with *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963(9th Cir. 2003).

[19] Malk Decl., ¶1, fn. 1.

Members were subject to, and not exempt from, the overtime requirements of California law; (2) whether Defendants violated the FLSA and California law by failing to include commissions and bonus payments when calculating the regular rate of pay in paying its employees overtime; (3) whether Plaintiff and Class Members were provided with accurate itemized wage statements as required by Cal Labor Code §226(a); (4) whether Plaintiff and Class Members were paid all wages due upon separation of employment as required by Cal. Labor Code §§201-203; (5) whether Defendants violated §17200 *et seq*. of the California Business & Professions Code by failing to pay 1.5 times the regular rate of pay, inclusive of non-discretionary bonuses and commissions, when paying overtime to its employees; and (5) the nature and extent of the California and FLSA Class-wide injury and the measure of damages for the injury.

## C. Rule 23(a)(3) Typicality

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. Here, typicality is satisfied because the Plaintiff's claims are the same as the claims that could be brought by Class Members.[20] Plaintiff worked as a typical Maintenance Technician and Maintenance Superintendant, and as such was subject to the same policies and practices that gave rise to the claims of the Class. *Id.* All Class Members seek the same relief; damages for Defendant's failure to pay 1.5 times the regular rate of pay, inclusive of non-discretionary bonuses and commissions, when paying overtime. Further, Plaintiff and all other Class Members allege the same injury.

## D. Rule 23(a)(4) Adequacy

---

[20] Malk Decl. ¶63; Goodwin Decl., ¶30.

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts interpret this requirement to mean that (1) the proposed class representatives and their counsel do not have conflicts of interest with the proposed class; and (2) the plaintiff and their counsel vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff does not have interests adverse to those of the Settlement Class.[21] Plaintiff was a typical Maintenance Technician and Maintenance Superintendent, and like the other Class Members was subject to all the alleged policies and practices that gave rise to the Action. Where, as here, the claims of the Class Members and the named Plaintiff are virtually coextensive, there is no conflict. *General Tel. Co. v. Falcon,* 457 U.S. 147, 157-8, n. 13 (1982). Additionally, Plaintiff understands the claims and theories that were alleged in the Action and has been involved at various stages throughout the litigation.[22] Likewise, Class Counsel has no conflicts of interest and has vigorously prosecuted the action on behalf of Plaintiff and the Settlement Class. Michael Malk, Esq. APC, has significant experience litigating class actions and has been certified by numerous state and federal courts as competent and adequate class counsel.[23]

## E. Rule 23(b)(3) Predominance

Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). For common questions of law and fact to predominate, the issues that are subject to generalized proof should predominate over those subject to individualized proof. *Ortega*

---

[21] Goodwin Decl., ¶30.

[22] Malk Decl., ¶¶63-64; Goodwin Decl., ¶¶7-28.

[23] Malk Decl. ¶¶5-40.

*v. J.B. Hunt Transport, Inc.,* 258 F.R.D. 361, 367 (2009) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 280 F.3d 124, 136 (2d Cir. 2001)). Accordingly, courts must determine whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of individual class members. *See, e.g., In re Lorazepam & Clorazepate Antitrust Lit.,* 202 F.R.D. 12, 29 (D.D.C. 2001).

Here, a common nucleus of facts and issues predominates over individual issues because Plaintiff can establish all of his claims by focusing on Defendant's company-wide policies and practices that applied consistently and uniformly to all Class Members throughout the Class Period. Specifically, Plaintiff can rely on common proof that Defendant failed to develop or enforce any systematic company-wide mechanism to affirmatively ensure that non-exempt property management workers were paid overtime at 1.5 times the regular rate of pay, inclusive of non-discretionary bonuses and commissions.

**F. Rule 23(b) Class Action is Superior**

To determine whether the class method is superior to other means of adjudicating the claims of many people, courts consider: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action. *J.B. Hunt,* 258 F.R.D. at 370. Here, the superiority requirement is satisfied because it would be highly inefficient for 1,259 Class Members to file individual cases; certification will provide the Settlement Class with a viable method of obtaining redress for their modest individual damages; and public policy supports the use of the class action device to secure the enforcement of statutes that focus on the workplace. *Hanlon,* 150 F.3d at 1023.

**IV.    PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

Rule 23(e) states that a court may approve a class action settlement only if it finds the settlement fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(A). The process by which the court makes this determination involves two steps: (1) there must be preliminary approval of the proposed settlement and of the Notice to be sent to class members, and (2) there must be a fairness hearing at which class members may be heard regarding the settlement and at which other evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is considered.

In connection with the first stage of the process, courts have determined that preliminary approval of the settlement and notice is appropriate if the proposed settlement: (1) falls within the range of possible approval, (2) appears to be the product of serious, informed and non-collusive negotiations, and (3) has no obvious deficiencies such as granting preferential treatment to segments of the class, granting unduly preferential treatment to the class representatives, or awarding unreasonable attorneys' fees. *See Man. For Complex Lit.,* (3d ed.) §30.41; *Newberg on Class Actions,* (4th ed. 2002) §§ 11:24-25; *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009).[24]

---

[24] Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 946-7 (9th Cir. 2011). Courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations. *Id*. A few such signs are: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for (footnote continues on next page)

## A. Settlement Agreement is Within the Range of Possible Approval

To evaluate the "range of possible approval" criterion, which focuses on "substantive fairness and adequacy," courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer. *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080. If the settlement confers substantial benefit, while proceeding with litigation would impose significant risks, then the settlement falls within the range of approval. *Vasquez,* 670 F. Supp. at 1125.

In *Glass v. UBS Fin. Servs*., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) the federal district court for the Northern District of California approved a settlement of an action where plaintiffs claimed unpaid overtime wages and the settlement amount constituted approximately 25% to 35% of the estimated actual loss to the class.[25] Here, the MSA as a percentage of the total potential exposure calculated by Plaintiff is approximately 63%.[26] As a result, this Settlement provides a far better recovery than was approved in *Glass* as fair, reasonable and adequate, and is therefore entitled to preliminary approval.

counsel accepting an unfair settlement on behalf of the class," and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.* (internal citations omitted).

Here, the settlement agreement was negotiated at arm's-length and there are no signs of collusion. Malk Decl., ¶53. As discussed herein, the settlement's provision for attorneys' fees is proportionate to the class award. Moreover, all unclaimed amounts shall be distributed to California and FLSA Class members who participate in the settlement. *See* Settlement Agreement ¶V.D. (i) and (ii). Thus, the MSA is non-reversionary.

[25] *See also*, *Dunleavy v. Nadler*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement which represented "roughly one-sixth of the potential recovery"); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial").

[26] Malk Decl., ¶60, n. 2. (Plaintiff's estimated damages, inclusive of liquidated damages, interest and penalties = $398,160.59.  As such, $250,000/398,160.59=63%).

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

Further, in this particular case, Plaintiff faced significant risks at the class certification stage as a result of three present factors:

(1) **Discretionary vs. Non-Discretionary:** the issue of whether Winn's bonuses and commissions were discretionary and therefore would not need to be included in the regular rate of pay for purposes of overtime;

(2) **Overlapping CA Class Action Which Settled Penalties:** the fact that on the date of the mediation Plaintiff was apprised that another, later-filed class action, which encompassed the same class members, was settled a couple of weeks before the mediation and the settlement included §§226, 203 and PAGA penalties, and

(3) **Overlapped Class Which Settled the Overtime Claims:** Defendant contended that most of the California overtime claim was settled in the earlier settled action, with the exception of about seven months of the Class Period.

Defendant thus argued that many of these very same claims regarding these very same class members were already settled.

**B. Settlement Was the Product of Informed, Non-Collusive Negotiations**

The Settlement Agreement is the product of adversarial litigation between the parties.[27] The Settlement Agreement and notice distribution plan result from an informed and thoroughly vetted analysis of the claims and defenses. Both parties are represented by independent counsel with considerable experience in litigating complex wage and hour class actions.[28] Counsel for both parties conducted significant informal discovery, and undertook thorough and factual analyses prior to the commencement of settlement

---

[27] Malk Decl., ¶12.

[28] Malk Decl., ¶¶5-40, 62.

negotiations and mediation.[29] After a full day of negotiation, the parties reached an agreement, which is memorialized in the Settlement Agreement, and which recognizes and reflects the inherent expense, delay and uncertainty that briefing a motion for class certification and eventually conducting a trial would necessarily entail.

## C. The Settlement Agreement Contains No Obvious Deficiencies

### 1. The Settlement Agreement Does Not Grant Preferential Treatment to Segments of the Class

Under the terms of the Settlement Agreement, after costs, fees and the enhancement award have been paid, each participating Settlement Class Member will receive a proportionate share of the net settlement amount based on the number of weeks worked during the Class Period. Settlement Agreement, ¶V.D. This methodology was adopted to reduce potential inequities between participating Settlement Class Members and to optimize the claim amount for each of them. Because each Claimant's share of the net settlement amount is based on a formula that includes the "weeks worked" specific to each member, no segment of the settlement class is given undue preferential treatment at the expense of others. As such, the Settlement Agreement contains a rational distribution mechanism and avoids any improper, preferential treatment to any part of the Settlement Class.

### 2. The Settlement Agreement Does Not Grant Unduly Preferential Treatment to the Class Representative

Likewise, the enhancement award contemplated by the Settlement Agreement, if approved by this Court, would not constitute unduly preferential treatment in favor of Plaintiff. In order to determine the propriety of enhancement awards, a district court should consider the actions protecting class interests, the benefit provided to the class

---

[29] *See*, Section II, *supra.*

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

based on those actions, and the amount of time and effort expended by the Plaintiff. *Staton v. Boeing Co.,* 327 F.3d 938, 976-77 (9th Cir. 1993).

Here, Plaintiff provided significant assistance to Class Counsel during this case. Specifically, Adam Goodwin undertook lengthy interviews with counsel, reviewed documents, attended the all day mediation and carefully considered, evaluated and approved the terms of the Settlement Agreement on behalf of the Class.[30] These efforts were instrumental in securing the favorable terms of the Settlement Agreement, which will provide monetary compensation to a Class of approximately 1,259 current and former employees of Defendant. Moreover, Plaintiff is also generally releasing all claims thereby providing a more robust release than that of the Class.[31] In light of these efforts, the proposed Enhancement Award of $7,500 to Plaintiff Adam Goodwin is reasonable and justifies preliminary approval.[32]

### 3.  The Attorneys' Fees Under the Settlement Agreement Are Reasonable

The proposed attorneys' fees should be preliminarily approved by this Court because they are reasonable and fair.[33] In cases that involve common funds, a court has discretion to award attorneys' fees as a percentage of the settlement. *See, Paul, Johnson, et al. v. Graulty,* 886 F.2d 268 (9th Cir. 1989). The court may consider: (1) whether counsel obtained excellent results for their client, (2) the risk involved in the

---

[30] Goodwin Decl., ¶¶7-28.

[31] Settlement Agreement ¶X.E.

[32] *See, e.g. Bond v. Ferguson Enterprises, Inc.*, Final Approval Order, Slip Copy, 2011 WL 2648879, E.D.Cal., June 30, 2011 (No. 1:09-CV-1662-OWW-MJS) (approving incentive payments of $11,250 to each of the two named plaintiffs); *Boring v. Bed Bath and Beyond of Cal. Ltd. Liab. Co.*, No. 12-cv-05259-JST, 2013 WL 6145706, at *8 (N.D. Cal. Nov. 21, 2013) (approving enhancement award of $7,500).

[33] Plaintiff intends to file and fully brief a motion for attorneys' fees prior to the final approval hearing and prior to the expiration of the deadline for class members to object to the settlement.

representation, and (3) fees awarded in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2003). As a cross-check, the court may examine Plaintiff's Counsel's lodestar. *Id.* at 1047.

Here, Plaintiff's Counsel achieved an excellent result for the Settlement Class. Plaintiff estimated that the realistic total recovery for the California Class would be approximately $224,227.87 and approximately $176,387.52 for the non-California Class members of the FLSA Class, for a combined total of roughly $398,160.59. The proposed Settlement of $250,000 (which will be apportioned 56% to the California Class and 44% to the FSLA Class to reflect the higher damages for the California Class) therefore represents a substantial recovery when compared to Plaintiff's forecasted recovery. As stated above, Plaintiff's Counsel secured an agreement whose MSA is approximately 63% of Plaintiff's maximum damages analysis, inclusive of liquidated damages, interest and penalties, and valuation of the Released Claims. The Settlement entitles participating Settlement Class Members to awards averaging approximately $112. Underscoring the benefit conferred upon the Settlement Class is the fact that litigating wage and hour class actions is inherently risky.[34] Importantly, Plaintiff's retainer agreement with Plaintiff's Counsel stipulates to attorneys' fees of up to 1/3.[35]

Furthermore, the requested attorneys' fees amounting to 1/3 of the Settlement Amount are consistent with the fees awarded in similar cases. *See e.g., Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) (affirming a 33% award); 4 Newberg et al., *Newberg on Class Actions* (4th ed. 2013) §14.6 "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"); *Singer v. Becton Dickinson and*

---

[34] *See,* Section IV(A), *supra.*

[35] Malk Decl., ¶72. Moreover, the fees requested here are consistent with the awards obtained in similar class actions. Malk Decl.*,* ¶71.

*Co.,* 2010 WL 2196104, *8 (S.D. Cal.) (approving fee award of 33.33% of the common fund; award was similar to awards in three other wage and hour class action cases where fees ranged from 30% to 40%); *Martin v. FedEx Ground Package System, Inc.,* 2008 WL 5478576, *8 (N.D. Cal.) (approving fees of 1/3 of common fund in wage and hour class action); *Romero v. Producers Dairy Foods, Inc.,* 2007 WL 3492841, *4 (E.D. Cal.) (awarding fees of 1/3 of common fund in a wage and hour class action, noting: "[f]ee awards in class actions average around one-third of the recovery.").

## V. <u>APPROVAL OF CLASS NOTICE AND RELATED FORMS</u>

### A. Administration of Notice, Objections and Claims

The parties have selected CPT Group, Inc. ("CPT"), an experienced claims administrator, to serve as the Settlement Administrator.[36] Within twenty-one (21) days of preliminary approval of the Settlement, Defendant will provide CPT with the full name, last known home address, last known telephone number, the last four digits of the Social Security number, dates of employment during the Class Period and the total weeks worked during the Class Period for each Settlement Class Member (the "Class List"). Settlement Agreement, ¶V.A. CPT will mail all Class Members the Class Notice and Claim Form.[37] The Claim Form provides each Settlement Class Member's estimated Settlement Share."[38] Class members have thirty (30) days from the notice mailing to submit a claim. All Claim Forms submitted to CPT by the deadline shall be deemed filed in this Action. Settlement Agreement, ¶II.T.

The notice informs each Class Member of his or her right to object to the settlement. Class Members who wish to object to the Settlement must object in writing,

---

[36] Malk Decl., ¶59.

[37] Attached respectively as Exhibits A and B to the Settlement Agreement. *See* Settlement Agreement, ¶¶ II.D., V.C. (ii).

[38] The notice explains that the final amount may change depending on the Court's final approval order.

stating the basis for the objection, file the objection with the Court and serve the parties' counsel and be postmarked no later than thirty (30) days after the mailing of the Class Notice. Settlement Agreement, Exhibit A. Otherwise, Class Members shall be deemed to have waived any objections and shall be foreclosed from making any to the Settlement.[39]

## B. The Court Shall Direct Distribution of the Notice of Settlement

This Court should order distribution of the proposed Class Notice in the manner described in the Settlement Agreement. Fed. R. Civ. P. 23(e)(1)(B) requires the Court to direct notice to class members "in a reasonable manner." *See also, Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173 (1974). Notice by mail provides adequate "individual notice to all members." *Id.* Where the names and addresses of the class members are ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. If notice by mail is ordered and addresses are available, as here, publication of notice is not necessary and is, in fact, "duplicative and serve[s] no purpose." *U.S. v. Truckee-Carson Irrigation Dist.,* 71 F.R.D. 10, 18 (D. Nev. 1975).

Here, the Class Members' names and last known addresses are ascertainable. The Class Members are current or former employees of Defendant, whose names, last known addresses, and social security numbers Defendant maintains in its personnel files. Although some Class Members' addresses may have changed, their social security numbers have not. Per the Settlement Agreement, the Claims Administrator will use its best efforts to locate Settlement Class Members and re-send the Class Notice. Settlement Agreement, ¶V.B. The proposed Class Notice fairly and accurately summarizes the terms of the Settlement Agreement and the Class Members' rights (including procedures for making claims, requesting exclusion from, or objecting to, the Settlement Agreement). Under these circumstances, Plaintiff submits that notice by mail is

[39] Class Members also have the right to challenge their Settlement Share and the data used to calculate their Settlement Share. Settlement Agreement, ¶V.E.

sufficient to comply with the requirements of Rule 23 and due process, and that notice as proposed should be approved.

## C. The Proposed Class Notice and Claims Process Are Appropriate

Fed. R. Civ. P. 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Class Notice fully complies with due process and Fed. R. Civ. P. 23. The Class Notice provides specifics regarding the date, time, and place of the Final Approval Hearing, and informs Class Members that they may enter an appearance through counsel. *See* Settlement Agreement, Exhibit 1. The Notice informs Class Members how to exercise their rights and make informed decisions regarding the proposed Settlement Agreement, and tells them that if they do not opt out, the judgment will be binding upon them. *Id.* The Notice informs the Settlement Class about the application of Plaintiff's Counsel for reimbursement of attorneys' fees and costs from the MSA, as well as the amount sought. *Id.* The Notice describes the terms of the Settlement Agreement, informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member. *Id.*

The detailed information in the Proposed Notice is more than adequate to put Class Members on notice of the Settlement Agreement. *See, e.g., Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the… settlement" satisfies standards).

**D. The Court Should Set A Final Approval Hearing**

Finally, this Court should set a hearing for final approval of the Settlement Agreement on a date to be scheduled within sixty (60) days after the end of the Claims Period, or at the earliest available time for the Court, whichever is later. In order to have time for the notice dissemination process to be completed, for the parties to review any objections and prepare responses, and for Plaintiff to prepare papers supporting final approval, Plaintiff proposes that the Court should set the final approval hearing on or after April, 2017, and allow the parties to file any final approval papers for the hearing twenty-one (21) days before the hearing.[40] These dates would allow a reasonable period for mailed notice and for Class Members to submit claims, object to or opt-out of the settlement, but would not unduly delay the Class Members' receipt of individual settlement awards.

**VI.    CONCLUSION**

For the reasons discussed above, Plaintiff requests that the Court enter an order of preliminary approval of the class action settlement, approve the form of the proposed notice, and approve the proposed schedule, including setting a date for a final approval hearing.

Dated: November 16, 2016                   Respectfully submitted,
                                           MICHAEL MALK, ESQ. APC


                                  By:    _____
                                           Michael Malk, Esq.

---

[40] As noted, the fees motion will be filed earlier, two weeks before the expiration of the deadline for Class Members to object to the settlement.