1  MICHAEL MALK, ESQ., APC
2  Michael Malk, Esq., (State Bar No. 222366)
   1180 South Beverly Drive, Suite 302
3  Los Angeles, California 90035
   Telephone: (310) 203-0016
4  Facsimile:  (310) 499-5210
5  mm@malklawfirm.com

6
   Attorneys for Plaintiff and the putative Class
7

8              **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10
   | ADAM GOODWIN, on behalf of himself and others similarly situated, | Case No. **1:15-cv-00606-**DAD-EPG |

ADAM GOODWIN, on behalf of
himself and others similarly situated,

              Plaintiff,

      v.

WINN MANAGEMENT GROUP
LLC, a Massachusetts Limited
Liability Company, and
DOES 1THROUGH 100, inclusive

              Defendants.

Case No. **1:15-cv-00606-** DAD-EPG

**DECLARATION OF MICHAEL MALK
IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINIARY
APPROVAL OF CLASS ACTION
SETTLEMENT**

Judge:  Hon. Dale A. Drozd
Date:   December 6, 2016
Time:   9:30 a.m.
Ctrm:   5

# DECLARATION OF MICHAEL MALK

## I.   INTRODUCTION

1.      I am an attorney at law duly licensed to practice law in California and admitted to practice before this Court.  I am a principal of Michael Malk, Esq. APC, counsel of record for Plaintiff and the proposed settlement classes (the "Settlement Class[1]") in this matter.

2.      After engaging in a difficult, but productive, day of settlement discussions, Plaintiff Adam Goodwin ("Plaintiff") and Winn Management Group LLC ("Defendant" or "Winn") have entered into a Class Action Settlement Agreement and Release of Claims ("Settlement Agreement").  The Settlement Agreement seeks to fully release and discharge Defendant from the claims brought against it in the matter of *Goodwin v. Winn Management Group LLC*, U.S. District Court, Eastern District of California, Case No. 1:15-cv-00606-GSA (the "Action"). In exchange, Winn will pay the Class up to $250,000. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1. The Class Notice and Claim Form are attached as Exhibits A and B to the Settlement Agreement.

3.      I am over 18 years of age. I have personal knowledge of the facts set forth in this declaration and could and would testify competently thereto.

4.      I have no knowledge of the existence of any conflict of interest between me and my firm and Plaintiff, on the one hand, and any Class Member, on the other hand.

---

[1]  1.  "California Class" refers to all non-exempt employees who worked for Defendant in California and both i) received non-discretionary compensation and ii) worked over 8 hours in a day or 40 hours in a week in at least one pay period between April 16, 2011 through the date of Preliminary Approval.

2.  "FLSA Class" refers to all non-exempt employees who worked for Defendant in the United States (except for California) and both i) received non-discretionary compensation and ii) worked over 40 hours in a week in at least one pay period between April 16, 2011 and the date of Preliminary Approval.

## II.   ATTORNEY EXPERIENCE

5.      In 1998, I received a B.A. from U.C. Santa Barbara, and in 2002, I received a J.D. from the U.C. Davis, School of Law.  I became a member of the Bar of the State of California in 2002.

6.      From August 2002 through June 2003, I worked for the Law Office of Neal T. Wiener, where I researched and wrote motions and writs in complex business litigation cases and class actions.

7.      From June 2003 through August 2007, I was an associate with the firm Eisenberg & Associates, a plaintiffs' employment law firm, where I handled every aspect of employment and wage and hour litigation including client interviews, drafting and filing complaints, drafting and responding to written discovery, taking and defending over sixty depositions, regularly opposing and arguing summary judgment motions, extensive trial preparation and trial assistance work.

8.      In August 2007, I started my own practice, in which I concentrate primarily on wage and hour class actions, and most of my case load consists of wage and hour class actions and multi-plaintiff cases.

9.      On June 25, 2008, the Honorable Elizabeth A. White found me to be adequate counsel in connection with granting preliminary and final approval of the class action settlement in the case of *Arcela v. Pacific American Fish Company, Inc*., Los Angeles Superior Court Case No. BC376255.  The *Arcela* case was a class action on behalf of truck drivers for failure to provide meal breaks, waiting time violations (Cal. Labor Code § 203), itemized wage statement violations (Cal. Labor Code § 226), failure to pay overtime, and violations of Cal. Business and Professions Code § 17200, et seq.

10.      On February 18, 2009, the Honorable Virginia Phillips approved me as adequate and competent class counsel in connection with her granting Plaintiffs' contested motion for class certification in the case of *Espinoza et al. v. Domino's Pizza, LLC*, Case No. 5:07-CV-01601-VAP.  *Espinoza* was a class action on behalf of truck

drivers for failure to provide meal breaks, failure to pay wages, as well as derivative claims.

11.     On April 14, 2009, the Honorable Valerie B. Fairbank approved me as adequate and competent class counsel in her final approval of the class action settlement in *Cetz v. Plycon Van Lines, Inc*., Case No. 2:08-CV-1492 VBF.  The *Cetz* case was a class and collective action on behalf of a class of warehouse employees for overtime, waiting time violations (Cal. Labor Code § 203), itemized wage statement violations (Cal. Labor Code § 226), unlawful payroll deductions for uniforms and violations of Cal. Business and Professions Code § 17200, *et seq*.

12.     On March 10, 2010, the Hon. Helen Bendix, in the case of *Branch v. Trimac Transportation Services (Western), Inc.*, Los Angeles County Superior Court Case Number BC393545, appointed me as class counsel (and found me to be competent and adequate) in connection with granting final approval to a class action settlement regarding meal break claims on behalf of a class of truck drivers.

13.     On April 23, 2010, in the case of *Barrett v. Doyon Security Services, LLC*, San Bernardino Superior Court Case Number BS900199, Commissioner Kirtland Mahlum appointed me as co-class counsel in conjunction with finally approving a class action settlement regarding overtime, meal and rest break claims on behalf of security guards.

14.     On April 27, 2010, in the case of *Lopez v. Lowey Enterprises, Inc*., Los Angeles Superior Court Case Number BC405179, the Honorable Rolf Treu appointed me as co-class counsel in conjunction with granting final approval to a class action settlement regarding meal break claims on behalf of truck drivers.

15.     On September 15, 2010 in the case of *Carson v. Knight Transportation, Inc*., Tulare County Superior Court Case Number 09-234186, the Honorable Lloyd Hicks granted Plaintiffs' Motion for Class Certification and found me to be adequate

counsel in a wage and hour class action on behalf of a class of over 2,000 truck drivers in connection with granting the contested motion.

16.     On January 11, 2011, in the case of *Lanuza v. Linde, Inc*., Los Angeles County Superior Court Case No. BC392871, the Honorable Gregory Alarcon appointed me as co-class counsel in conjunction with finally approving a class action settlement regarding meal break claims on behalf of a class of truck drivers.

17.     On July 26, 2011, in the case of *Barrett v. Floyds 99 California, LLC*, Los Angeles Superior Court Case No. BC422014, the Hon. Ralph Dau appointed me as class counsel in connection with his order granting a contested class certification motion on behalf of a class of hair stylists for, among other things, failure to provide meal breaks.

18.     On August 16, 2011, in the case of *Anderson v. Andrus Transportation*, San Bernardino County Superior Court Case No. CIV DS 915878, the court appointed me as co-class counsel in connection with its order granting a contested class certification motion regarding a class of truck drivers.

19.     On September 12, 2011, in the case of *Monreal v. The Jacmar Companies, Inc*., Los Angeles County Superior Court Case Number BC436027, the Hon. William F. Highberger appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding meal break claims on behalf of a class of truck drivers.

20.     On April 25, 2012, in the case of *Nelson v. Dollar Tree Stores, Inc*., Case No. 2:11-CV-01334-JAM, the Honorable John Mendez appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding expense reimbursement claims on behalf of a class of managers and assistant managers in his order granting fees in connection with the final approval of *Nelson v. Dollar Tree Stores, Inc.* (E.D. Cal. April 25, 2012).

21.     On June 22, 1012, in the case of *Mills, et al. v. Kemira Logistics, Inc*. (C.D. Cal. June 22, 2012), Case No. CV-10-1834-DMG, the Honorable Dolly Gee appointed

me as co-class counsel in connection with her granting final approval to a settlement regarding meal break claims on behalf of a class of truck drivers.

22.     On September 6, 2012, in the case of *Fowler v. Biagi Bros., Inc.*, Los Angeles Superior Court Case No. BC435937, the Hon. Mark Mooney appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding meal break claims on behalf of a class of truck drivers.

23.     On February 1, 2013, in the case of *Garcia et al v. Northstar Moving Corporation, Inc.*, Los Angeles Superior Court Case. No. BC475202, the Hon. Lee Smalley Edmon appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding wage and hour claims (including failure to reimburse reasonable expenses) on behalf of a class of movers.

24.     On September 16, 2013, in the case of *Zotea v. Ross Stores, Inc.*, Alameda County Case No. VG11592051, the Hon. Wynne Carvill, appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding the failure to reimburse mileage expenses on behalf of a class of retail supervisory employees.

25.     On October 24, 2013, in the case of *Rosio Reyes et al. v. Eurostar, Inc.*, Los Angeles Superior Court Case No. BC475950, the Hon. Michael Stern, appointed me as class counsel in conjunction with granting final approval to a settlement regarding, among other things, the failure to reimburse mileage expenses on behalf of a class of retail employees.

26.     On November 1, 2013, in the case of *Grom v. The Men's Wearhouse, Inc.*, Sacramento Superior Court Case No. 34-2012-00117446, the Hon. Alan G. Perkins, appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding the failure to reimburse mileage expenses on behalf of a class of retail employees.

27.     On November 20, 2013, in the case of *Monterrubio v. Best Buy Stores, L.P.*, Case No. 2:11-cv-03270-MCE-AC (E.D. Cal.), the Hon. Morrison C. England Jr.,

appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding wage and hour claims (including failure to reimburse reasonable expenses) on behalf of a class of retail supervisory employees.

28.     On March 11, 2014, in the case of *Lee v. Jack in the Box, Inc.*, Contra Costa Superior Court Case No. CIVMSC12-00213, the Hon. Laurel S. Brady appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding the failure to reimburse mileage expenses on behalf of a class of general managers, restaurant managers, assistant managers, and team leaders employed by the restaurant chain.

29.     On March 21, 2014, in the case of *Clayton v. Knight Transportation, Inc.*, Case No. 1:11-cv-00735-LJO-DLB (E.D. Cal.), the Hon. Magistrate Judge Stanley A. Boone appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding a class of truck drivers for unpaid orientation time.

30.     On March 25, 2014, in the case of *Montes v. Southern California Discount Tire Co., Inc.*, San Diego Superior Court Case No. 37-2012-00086167-CU-OE-CTL, the Hon. Joel R. Wohlfeil appointed me as class counsel in conjunction with granting final approval to a settlement regarding the failure to reimburse mileage expenses on behalf of a class of store managers, senior assistant store managers, and assistant store managers employed by the retail chain.

31.     On June 30, 2014, in the case of *Boring v. Bed Bath & Beyond of California Limited Liability Corporation*, Case No. 12-cv-05259-JST (N.D. Cal.), the Honorable Jon S. Tigar, appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding the failure to reimburse mileage expenses on behalf of a class of retail supervisory employees.

32.     On August 13, 2014, in the case of *Johnson v. Marten Transport, LTD.*, San Bernardino Superior Court Case No. CIVRS-1008457, the Hon. Janet Frangie appointed me as co-class counsel in conjunction with granting final approval to a settlement

regarding a class of truck drivers whose final paychecks were deducted for orientation fees and/or expenses.

33.     On September 29, 2014, in the case of *In re Walgreen Wage & Hour Litigation*, Case No. CV 11-7664 PSG (FFMx) (C.D. Cal.), the Hon. Philip S. Gutierrez, appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding the failure to reimburse mileage expenses on behalf of a class of retail supervisory employees.

34.     On February 6, 2015, in the case of *Parker v. Sit 'N Sleep, Inc*., Los Angeles Superior Court Case No. BC507674, the Hon. Kenneth Freeman appointed me as class counsel in conjunction with granting final approval to a settlement regarding the failure to pay minimum wages and reimburse mileage expenses on behalf of a class of retail Store Managers, Assistant Managers and Sleep Consultants.

35.     On May 29, 2015, in the case of *Ramirez v. Southern California Permanente Medical Group*, Los Angeles Superior Court Case No. BC 531547, the Hon. John Shepard Wiley, Jr., appointed me as class counsel in conjunction with granting final approval to a settlement regarding the failure to provide meal breaks, rest breaks, pay overtime, issue accurate itemized wage statements (Cal. Labor Code § 226), and for violations of Cal. Business and Professions Code § 17200, *et seq.*, on behalf of a class of non-exempt medical employees.

36.     On December 22, 2015, the Hon. Edward M. Chen found me to be adequate class counsel when he granted Plaintiff's contested Motion for Class Certification in the case of *Melgar v. CSK Auto, Inc*. Case No. 13-cv-03769-EMC (N.D. Cal. 2015).

37.     On January 20, 2016, in the case of *Barrett v. Floyds 99 California, LLC*, Los Angeles Superior Court Case No. BC422014, the Hon. William F. Highberger appointed me as class counsel in connection with its order granting final approval of a wage and hour settlement.

38.     On July 19, 2016, in the case of *Carrillo v. SGS North America, Inc.,* Los Angeles Superior Court Case No. BC560240, the Hon. Ann I. Jones appointed me as co-class counsel in connection with its order granting final approval of a wage and hour settlement.

39.     On September 14, 2016, in the case of *Jackson v. SAS Retail Services*, LLC, Los Angeles Superior Court Case No. BC570744, the Hon. William F. Highberger appointed me as class counsel in connection with its order granting preliminary approval of a wage and hour settlement.

40.     On September 29, 2016, in the case of *Ortiz  v. Thrifty Payless, Inc*., Los Angeles Superior Court Case No. BC494909, the Hon. Kenneth Freeman appointed me as class counsel in connection with its order granting preliminary approval of a wage and hour settlement.

41.     I am a member of the California Employment Lawyer's Association ("CELA"), as well as a member of CELA's Wage and Hour Committee.  I am also a member of the Labor and Employment Section of the Los Angeles County Bar Association, and the Employment Section of the State Bar of California.

## III.     RELEVANT FACTS AND SETTLEMENT

42.     I have performed substantial work and diligently investigated and prosecuted this case to a successful conclusion.  Our work resulted in the creation of a settlement fund for the benefit of the class. We avoided protracted litigation by conducting considerable investigation of the class claims, and efficiently communicating and exchanging information with Defense counsel such that the parties could successfully settle the case after some formal discovery followed by informal discovery, but before a Class certification motion was heard by the Court. Because of the risks involved in continuing with litigation and the contested legal and factual issues, Plaintiff's Counsel believes this Settlement to be fair, reasonable, and adequate.

43.     Prior to filing the Complaint, Class Counsel conducted an initial investigation of the facts and the law. Class Counsel comprehensively investigated the applicable law as applied to the facts discovered, regarding the suitability of the action for class treatment, the claims of Plaintiff, and the damages claimed by Plaintiff. These witnesses corroborated the class-wide claims in Plaintiff's complaint and supported my belief that Plaintiff was a typical Maintenance Technician and Maintenance Superintendent, and as such was subject to the same policies and procedures that gave rise to the claims of the Class. In other words, typicality was satisfied because the Plaintiff's claims were the same as the claims that could be brought by Class Members.

44.     On April 17, 2015, Plaintiff filed his original class action complaint with the United States District Court, Eastern District of California. In it, Plaintiff set forth five claims: (1) failure to pay overtime in violation of 29 U.S.C. §201 *et seq*.; (2) failure to pay overtime in violation of Cal. Labor Code §§ 510, 1194; (3) failure to issue accurate wage statements in violation of Cal. Labor Code §§ 226, 226.3; (4) failure to pay wages due upon separation of employment in violation of Cal. Labor Code §§201-203; and (5) class-wide violations of California Business and Professions Code, §§17200 *et seq*,. on the basis of unfair and/or unlawful business practices.

45.     On May 20, 2015, Plaintiff filed a First Amended Complaint adding a cause of action pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA").

46.     Subsequently, both parties propounded written discovery. After several conversations between me and defense counsel, we agreed to engage in informal discovery and explore the possibility of the cost effective alternative of settlement. In preparing for the mediation, I reviewed Defendant's response to discovery and various documents produced by Defendant. I reviewed and analyzed information and data produced by Defendant about the size of the class inside California versus outside of California, Defendant's overtime policies and practices, the number of properties

Defendant operated in California and throughout the nation during the Class Period, and the number of bonuses paid-out in pay periods where Class members worked overtime during the Settlement Class Period. We also conducted legal research into the case law applicable to Plaintiff's claims, the class certification decisions involving similar cases, and reported settlements of similar cases.

47.    Plaintiff's Counsel discussed with Defendant's Counsel the data and information required to prepare a damages analysis for a formal settlement demand. Prior to mediation, Plaintiff's Counsel sent Defense Counsel a letter requesting information and documents and Defendant collated extensive information and provided it to Plaintiff. As part of informal discovery prior to mediation, Winn provided actual data of all the bonus, commission and/or incentive compensation data during the Class Periods for the California and FLSA Classes, along with the regular and overtime hours worked applicable to that compensation.  Additionally, Winn provided the average hourly rates for the putative class members during the Class Periods. *Id.*

48.    Based on the data Defendant provided, Winn's maximum exposure, assuming Plaintiff succeeded in certifying the claims and prevailing completely on the merits, for the California Class, for overtime owed on bonuses and commissions was $6,426.97, and including liquidated damages, interest and penalties, was $224,227.87.

49.    Regarding the FLSA Class, according to Plaintiff's damages model, Winn's maximum exposure, assuming Plaintiff succeeded in certifying the claims and prevailing completely on the merits, for overtime owed on bonuses and commissions was $75,654.53, and including liquidated damages and interest, was $176,387.52.

50.    Plaintiff estimated the total maximum exposure for both the California and FSLA Settlement classes, assuming Plaintiff succeeded in certifying the claims and prevailing completely on the merits, for overtime on bonuses and commissions was $82,081.50, and including liquidated damages, interest and penalties was $398,160.59.

This figure assumes a 100% probability of prevailing on the merits and certification and being awarded full penalties.

51.     On August 16, 2016, the parties attended an all-day mediation with mediator Robert Kaplan in San Diego, California. I attended on behalf of Plaintiff and Barry Goldstein, Esq. also attended on behalf of Plaintiff. Attorneys Mark Jacobs and Shaun J. Voigt, of Fisher & Phillips, LLP, attended on behalf of Defendant. Discussion focused on the many disputed legal and factual issues.  Counsel for both parties analyzed the data provided by Defendant to estimate potential damages in the litigation.  Arm's-length negotiations were conducted in good faith.  The negotiations were lengthy and hard-fought.

52.     Prior to the settlement meeting, Plaintiff's counsel calculated a violation rate of 100% for all claims asserted in the Complaint.  At the settlement meeting, Winn made the following arguments in its defense for which substantial "deductions" were thought to be appropriate by Plaintiff's counsel and were applied to the maximum liability amount.  Defendant emphasized that Plaintiff faced some risk that the Court may not certify the class because according to defendant bonuses were discretionary and therefore, Defendant properly paid its employees overtime at the regular rate of pay. Further, a later-filed class action settled two weeks prior to mediation, and that action included §§226, 203 and PAGA penalties. Thus, Defendant contended that penalties were therefore not recoverable in this Action. Defendant also argued that the California overtime claim was settled in the later-filed class action, with the exception of about 7 months of the Class Period in this Action prior to the filing of the other action. Defendant argued that many of the very same claims regarding these very same class members were already settled. Lastly, Defendant corrected certain assumptions I had made. For example, I had initially assumed that every California Class Members both a) received a bonus and b) worked overtime in every pay period. However, Defendant presented evidence that bonuses were only paid out 293 times over the penalty period in

pay periods where the California Class members worked overtime. Ultimately, Class Counsel was able to negotiate a Settlement that allows all Settlement Class Members to recover more than one hundred percent (100%) of their alleged wage losses, and a large portion of liquidated damages, interest and penalties.

53.     After a full day of negotiations, which were adversarial and conducted at arm's length through the mediator, the parties agreed to settle for $250,000 with a claims process and no reversion to Defendant of any settlement monies, even those unclaimed. Unclaimed funds, if any, will be re-allocated to the Settlement Class Members who participate in the settlement. Plaintiff estimated that the realistic total recovery for the California Class would be approximately $224,227.87 and approximately $176,387.52 for the non-California Class members of the FLSA Class, for a combined total of roughly $398,160.59. The proposed Settlement of $250,000 (which will be apportioned 56% to the California Class and 44% to the FSLA Class to reflect the higher damages for the California Class) therefore represents a substantial recovery when compared to Plaintiff's forecasted recovery.

54.     The terms of the agreement were memorialized in a Memorandum of Understanding which served as the basis for the parties Settlement Agreement and related documents. *See*, Exhibit 3.

55.     Following the mediation, my office edited the detailed Settlement Agreement and negotiated with Defense counsel over its terms for the course of many months.

56.     Plaintiff approved of the settlement on behalf of the Class. During the week of November 14, 2016, the parties finalized and fully executed their Settlement Agreement. The Settlement Agreement is the product of adversarial litigation between the parties.

57.     Class Counsel was responsible for drafting, revising, finalizing, and filing with the Court on November 16, 2016, the following documents: Plaintiff's Notice of

Motion and Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points and Authorities in Support of Preliminary Approval of Class Action Settlement; the Settlement Agreement, Class Notice, and Claim Form, the Declaration of Michael Malk and the Declaration of Adam Goodwin. The process of drafting and finalizing these documents required the exchange of several drafts with defense counsel.

58.     Settlement Class Members will receive approximately $112 on average.

59.     The parties selected CPT Group, Inc., an experienced claims administrator, to serve as the Settlement Administrator.

## III.   FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT

60.     The proposed settlement here is fair to the Class. In light of the foregoing, I believe that the Maximum Settlement Amount of $250,000 is reasonable given the risk, expense, complexity, and likely duration of further litigation. It is reasonable both when viewed through the prism of a claim-by-claim analysis based on the facts and evidence in this case, as well as when it is compared with other settlements of similar cases.[2]

61.     Based on our own independent investigation, evaluation and consultation with Plaintiff, Plaintiff's counsel is of the opinion that the class settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate and is in the best interests of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay,

---

[2] Plaintiff's Counsel secured an agreement whose Maximum Settlement Amount ("MSA") is equivalent to approximately 63% of Plaintiff's maximum damages analysis, inclusive of liquidated damages, interest and penalties, and valuation of the Released Claims. These results far exceed other class action settlements approved by other federal courts in California. *See, e.g. Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) (settlement amount constituted approximately 25% to 35% of the estimated actual loss to the class).

defenses asserted by Defendant, uncertainties regarding class certification, the assertion that bonuses may have been discretionary and the fact that a later-filed class action settled a couple of weeks before the mediation which included §§226, 203 and PAGA penalties, and numerous other potential appellate issues.

62.     Plaintiff's Counsel negotiated the proposed Settlement with ample knowledge of the strengths and weaknesses of this case, the amounts necessary to compensate Class Members for their damages, and the benefits of the proposed Settlement under the circumstances of this case. In addition, Plaintiff's Counsel, as well as Defense counsel, are experienced class action, litigation and employment attorneys, and have relied on their experience and expertise in fashioning a proposed Settlement that is acceptable to both parties. The settlement amount here far exceeds settlements obtained and approved in other similar wage and hour class actions. *See e.g., Glass*, 2007 U.S. Dist. LEXIS 8476 (settlement amount constituted approximately 25% to 35% of the estimated actual loss to the class.); *Dunleavy v. Nadler*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement which represented "roughly one-sixth of the potential recovery"); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial").

63.     Given the litigation risks involved, the proposed settlement is well within the realm of being fair, reasonable, and adequate.

64.     Moreover, the proposed enhancement award is fair and reasonable. Plaintiff's claims are also reasonably coextensive with those of the Class.  All of the claims asserted by Plaintiff on behalf of himself and the Class arise out of common facts. Additionally, Plaintiff has been instrumental in prosecuting this Action and was an important source of information during the course of this litigation. Moreover, Plaintiff has no interests antagonistic to the interests of the Class.

65.     Class Representative Goodwin provided invaluable assistance to Class Counsel and the Class in this case, including providing factual background for the Class Complaint; speaking with other potential class members about their experiences working for Defendant; reviewing the Complaint and other pleadings filed with the Court by Plaintiff and Defendant; attending the all-day mediation, participating in phone calls to discuss litigation and settlement strategy; and assisting Class Counsel in the preparation of the settlement documents. The Plaintiff agreed to participate in this case with no guarantee of personal benefit. Further, he agreed to undertake the financial risk of serving as Class Representative and exposed himself to the risk of negative publicity by anyone who opposed this case. Moreover, the requested $7,500 enhancement award falls well within the range of enhancement awards typically awarded to Class Representatives in similar wage and hour class actions.

66.     The Settlement Class would have received no benefit had it not been for the contributions of Plaintiff. Moreover, Plaintiff faced and accepted the significant risk in bringing this litigation – namely, that if he lost, he could have been ordered to pay Defendant's costs. In contrast to the more limited class release, Plaintiff also agreed to a more robust general release of all his claims in the Settlement Agreement.

67.     I believe the requested enhancement award of $7,500 to Plaintiff is reasonable and well within precedent for Preliminary and Final Approval.

## IV.    ATTORNEYS' FEES

68.     My firm devoted a significant amount of time to building this case. Soon thereafter, I had a series of conversations with Defendant's counsel, wherein we discussed the possibility of the parties informally exchanging information in order to determine whether the parties would be able to settle this case early and efficiently.

69.     Under the terms of the Settlement Agreement, Class Counsel is requesting $82,500.00 in attorneys' fees. This amount is equal to 1/3 of the $250,000 agreed upon by the parties as the total MSA.

70.     The proposed Settlement provides that Plaintiff will request, and Defendant will not oppose, an award to Class Counsel in an amount not to exceed $82,500.00 in attorneys= fees and up to $15,000 in actual expenses and costs, and payment of $7,500 as a participation award to Plaintiff for his time, effort and risk as Class Representative, which will be deducted from the $250,000 settlement fund. The total attorneys' fees of $82,500.00 to compensate Class Counsel for their time represents approximately 1/3 of the $250,000 settlement fund, which is within the range of attorneys= fees awarded in similar cases.

71.     The requested fees of up to 1/3 of the MSA is also consistent with awards in similar class action cases preliminary approved by other federal and state courts in California. *See e.g.*, *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) (affirming a 33% award); 4 Newberg et al., *Newberg on Class Actions* (4th ed. 2013) §14.6 "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"); *Singer v. Becton Dickinson and Co.,* 2010 WL 2196104, *8 (S.D. Cal.) (approving fee award of 33.33% of the common fund; award was similar to awards in three other wage and hour class action cases where fees ranged from 30% to 40%); *Martin v. FedEx Ground Package System, Inc.,* 2008 WL 5478576, *8 (N.D. Cal.) (approving fees of 1/3 of common fund in wage and hour class action); *Romero v. Producers Dairy Foods, Inc.,* 2007 WL 3492841, *4 (E.D. Cal.) (awarding fees of 1/3 of common fund in a wage and hour class action, noting: "[f]ee awards in class actions average around one-third of the recovery.").

72.     Moreover, if it becomes necessary to litigate this matter further, my firm has the financial resources and is prepared to devote whatever time and effort are required to zealously advocate on behalf of Plaintiff and the Settlement Class. Significantly, the Retainer Agreement in this case provides fees up to 1/3 of the amount obtained.

73.     Of course, if the Settlement is given preliminary approval by the Court, our firm will need to expend additional hours coordinating with the settlement administrator, answering calls and questions from Class Members, making calls to Class Members to make sure they received the notice and understand their rights, and preparing and filing the motion for final approval and the motion for attorneys' fees and reimbursement of litigation costs. Class Counsel thus anticipates that at least 30 additional hours of work will be needed to shepherd the settlement through final approval.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed on November 16, 2016 in Los Angeles, California.

By: _____

MICHAEL MALK, Esq.

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Class Action Settlement Agreement and Release of Claims ("Settlement Agreement," "Settlement" or "Agreement"), is entered into by and between Defendant WINN MANAGEMENT GROUP LLC ("Defendant"), as well as its affiliates, agents and representatives, on the one hand, and Plaintiff ADAM GOODWIN ("Plaintiff"), on behalf of himself and on behalf of the class members described below, on the other hand.  This Agreement is intended to fully, finally and forever resolve, discharge and settle the Released Claims, as defined below, upon and subject to the terms and conditions of this Agreement.

## I.    RECITALS

A.    WHEREAS, on April 17, 2015, Plaintiff filed a putative class action, entitled *Adam Goodwin v. Winn Management Group LLC et al.,* Case No. 1:15-cv-00606-GSA, in the United States District Court, Eastern District of California;

B.    WHEREAS, on May 20, 2015, Plaintiff filed a First Amended Complaint;

C.    WHEREAS, on August 16, 2016, the Parties attended mediation with Robert J. Kaplan, Esq. and reached an agreement in principle on a settlement that is intended to fully and finally resolve all Released Claims as to all Settlement Class Members in the Action;

D.    WHEREAS, Plaintiff on behalf of himself and all Settlement Class Members has alleged that Defendant violated the California Labor Code, California Private Attorneys General Act ("PAGA"), California Industrial Welfare Commission Wage Orders, California Business & Professions Code, and the Fair Labor Standards Act by failing to include non-discretionary compensation in Settlement Class Members' regular rate of pay, failing to provide accurate pay stubs, failing to timely pay all final wages, and unfair business practices; and

E.    WHEREAS, Defendant denies any and all allegations alleged in the Action.

NOW, THEREFORE, the Parties agree as follows:

## II.    DEFINITIONS

A.    "Action" refers to the class action lawsuit identified in the Recitals above, *Adam Goodwin v. Winn Management Group LLC et al.,* Case No. 1:15-cv-00606-GSA.

B.    "California Class" and "California Class Members" refers to all non-exempt employees who worked for Defendant in California and both i) received non-discretionary compensation and ii) worked over 8 hours in a day or 40 hours in a week in at least one pay period between April 16, 2011 through the date of Preliminary Approval

C.    "Class Counsel" refers to Michael Malk, Esq. of MICHAEL MALK, ESQ., APC.

## Exhibit 1

D.     "Class Notice" refers to the Notice (substantially in the form attached hereto as Exhibit A) as it may hereafter be modified by agreement of the Parties or order of the Court.

E.     "Class Period" refers to the period from April 17, 2011 through the date of Preliminary Approval of this Settlement by the Court.

F.     "Court" refers to the court having jurisdiction over the Action, at any stage of the Action, presently the United States District Court, Eastern District of California.

G.     "Defendant" refers to Defendant Winn Management Group, LLC, as well as their affiliates, agents and representatives, including but not limited to WinnResidential California L.P.

H.     "Defense Counsel" refers to Mark Jacobs, Esq. and Shaun J. Voigt, Esq. of Fisher & Phillips LLP.

I.     "Final Approval Order" refers to the order of the Court granting final approval of this Settlement and entering a judgment approving this Settlement on substantially the terms provided herein or as the same may be modified by subsequent agreement of the Parties.

J.     "Final Settlement Class" or "Final Settlement Class Members" refers to all members of the Settlement Class who do not timely and validly exclude themselves from the class in compliance with the exclusion procedures in this Agreement and the Class Notice.

K.     "Final Effective Date" refers to: (1) if there is an appeal of the trial court's Final Approval Order and Judgment in the Action, including any appeal of an award of attorney's fees or incentive payment to the Plaintiff, the date of final affirmance of the Judgment on an appeal, the date of dismissal of such appeal, the expiration of the time for a petition for review of such appeal, and, if review is granted, the date of final affirmance of that Judgment following review pursuant to that grant; or (2) if there is no appeal, then thirty (30) calendar days after entry of the trial court's Final Approval Order and Judgment in the Action.

L.     "FLSA Class" and "FLSA Class Members"  refers to all non-exempt employees who worked for Defendant in the United States (except for California) and both i) received non-discretionary compensation and ii) worked over 40 hours in a week in at least one pay period between April 16, 2012 and the date of Preliminary Approval.

M.     "Judgment" refers to the judgment entered by the Court in conjunction with the Final Approval Order.

N.     "Maximum Settlement Amount" shall be the maximum amount to which Defendant are obligated to pay under this Agreement in the amount of Two Hundred Fifty Thousand Dollars and Zero Cents ($250,000.00).

O.     "Net Settlement Amount" refers to the Maximum Settlement Amount, less (1) attorney's fees and costs of Class Counsel as approved by the Court, (2) an incentive payment to

Exhibit 1

Plaintiff as approved by the Court, (3) fees to the settlement administrator as approved by the court, and (4) civil penalties payable to the California Labor and Workforce Development Agency ("LWDA") pursuant to PAGA as approved by the Court.

P.      "Parties" collectively refers to the Plaintiff and Defendant.

Q.      "Plaintiff" refers to Adam Goodwin.

R.      "Preliminary Approval" refers to the date on which the Court grants preliminary approval of the Settlement.

S.      "Preliminary Approval Order" refers to the order of the Court granting preliminary approval of the Settlement set forth herein.

T.      "Response Deadline" or "Response Period" means the date thirty (30) days after the Settlement Administrator mails Class Notice to Settlement Class Members and the last date on which Settlement Class Members may submit a request for exclusion and/or objection to the Settlement.

U.      "Settlement Administrator" refers to CPT Group, Inc., or such other entity upon whom the Parties mutually agree and which will handle the administration of the Settlement set forth in this Agreement.

V.      "Settlement Class" or "Settlement Class Member" refers collectively to the California Class and FLSA Class.

W.      "Settlement Share" refers to the payment to which a Final Settlement Class Member is entitled to receive pursuant to this Settlement.

## III.   **APPLICATION FOR COURT APPROVAL OF SETTLEMENT, CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY, CLASS NOTICE, AND FINAL APPROVAL HEARING**

Promptly upon the full execution of this Agreement, Plaintiff shall apply to the Court for approval of the Settlement, including a Preliminary Approval Order preliminarily approving the Settlement Agreement under the legal standards relating to the approval of class and collective action settlements; certifying the Settlement Class for settlement purposes only; approving the Class Notice; and setting a final approval hearing and briefing schedule.  Should this Settlement not become effective for any reason, the fact that the Parties stipulated to certification of a Settlement Class in this Agreement shall have no bearing on and shall not be admissible on the question of whether a class/collective action should be certified in a non-settlement context.

## IV.   **SETTLEMENT ADMINISTRATION**

A.      Engagement of Settlement Administrator: Promptly upon entry of the Preliminary Approval Order (if not sooner), Defendant shall engage the Settlement Administrator.

Exhibit 1

B.     <u>Duties of Settlement Administrator</u>: The Settlement Administrator shall be solely responsible for:

i)      Preparing, printing and disseminating to Settlement Class Members the Class Notice;

ii)     Promptly furnishing to Class Counsel and Defense Counsel copies of any requests for exclusion, objections or other written or electronic communications from Settlement Class Members which the Settlement Administrator receives;

iii)    Determining and distributing the Settlement Share to each Final Settlement Class Member;

iv)     Keeping track of requests for exclusion;

v)      Preparing and mailing, in accordance with this Agreement and Order of the Court, Class Counsel's attorney's fees and costs, the Plaintiff's incentive payment, the LWDA portion of the PAGA payment, and Settlement Shares to Final Settlement Class Members;

vi)     Ascertaining current address and addressee information for each Class Notice returned as undeliverable and re-mailing the Class Notice where appropriate;

vii)    Performing all tax reporting duties required by federal, state, and/or local law pertaining to the Settlement Administrator's duties (e.g., 1099s, W-2s, EDD reporting, etc.);

viii)   Apprising Class Counsel and Defense Counsel of the activities of the Settlement Administrator;

ix)     Maintaining adequate records of its activities, including the dates of each mailing of Class Notices, returned mail and other communications and attempted written or electronic communications with Settlement Class Members;

x)      Confirming with Class Counsel and Defense Counsel, in writing, its completion of the administration of the Settlement;

xi)     Preparing a final report summarizing the number of requests for exclusion returned during the Response Period, as well as any objections filed with the Court;

Exhibit 1

xii)    Resolving disputes during the settlement administration process in the manner provided under subparagraph C. below; and

xiii)    Such other tasks as the Parties mutually agree.

C.    <u>Dispute Resolution</u>: The Settlement Administrator will have the initial responsibility for resolving all disputes that arise during the settlement administration process, including, without limitation, disputes regarding whether an employee is entitled to a Settlement Share and, if so, to what extent.  In resolving such disputes, Defendant's employment records shall be presumed to be accurate and correct, and shall be final and binding, unless the information submitted by the Settlement Class Member (e.g., time records, paystubs, employment records, termination notice, final pay information, etc.) proves otherwise.  In the event the Settlement Administrator cannot resolve a dispute based on a review of the available information, the Settlement Administrator will request a conference call between the Settlement Administrator, Class Counsel, and Defense Counsel to discuss and resolve the dispute.  After such call, the Settlement Administrator will resolve the dispute and such resolution shall be final and binding on the Settlement Class Member unless the Settlement Class Member petitions the District Court to review the Settlement Administrator's decision.

## V.    CLASS NOTICE; PARTICIPATION IN THE SETTLEMENT

A.    <u>Initial Identification of Settlement Class Members</u>: Within twenty-one (21) days after the Court grants Preliminary Approval, Defendant will provide the Settlement Administrator with a confidential list containing the following for each Settlement Class Member:  (1) name; (2) last known address; (3) social security number; and (4) number of weeks worked during the Class Period based on dates of employment.  This information shall be treated by the Settlement Administrator as confidential.

B.    <u>Mailing of Class Notice</u>: Promptly upon receipt of the Settlement Class Member information from Defendant, the Settlement Administrator shall obtain updated forwarding addresses from the U.S. Postal Service.  Within ten (10) days after receipt of the Settlement Class Member information identified in section V.A., the Settlement Administrator shall mail the Class Notice to all Settlement Class Members via first-class mail using the updated address information.  With respect to each Class Notice which is returned as undeliverable before the end of the Response Deadline, the Settlement Administrator shall promptly attempt to determine a correct address using its best efforts to locate the Settlement Class Members and shall re-send the Class Notice via fist-class mail to any new address thereby determined.

C.    <u>Participation in the Settlement</u>.  Participation in the Settlement shall be determined as follows:

(i)    California Settlement Class members who are employed by Defendant as of the date on which Preliminary Approval is granted, as well as Plaintiff, are not required to file claims to be eligible to recover a Settlement Share as part of this Settlement; and

Exhibit 1

(ii)     All California Settlement Class members who are no longer employed by Defendant as of the date on which Preliminary Approval is granted (except Plaintiff), as well as all FLSA Class members must complete and return a valid claim form, attached hereto as Exhibit B, in order to participate in the settlement.

D.    <u>Allocation of the Net Settlement Amount</u>.  The Net Settlement Amount shall be allocated proportionally as follows: 56% of the Net Settlement Amount shall be distributed to the California Settlement Class, and 44% of the Net Settlement amount shall be distributed to the FLSA Settlement Class.  The Settlement Shares will be proportionally based on the number of workweeks, and the Settlement Share amounts shall be determined by the Settlement Administrator as follows:

(i)     <u>California Settlement Class:</u>   The workweeks worked during the Class Period by each California Settlement Class Member will be divided by the total workweeks worked during the Class Period for all California Settlement Class Members, resulting in the Payment Ratio for each California Settlement Class Member.  Each California Settlement Class Member's Payment Ratio is then multiplied by the Net Settlement Amount allocated to the California Settlement Class to determine the proportionate allocation.  All unclaimed amounts shall be distributed on a pro-rata basis to California Settlement Class members who participate in the settlement.

(ii)    The workweeks worked during the Class Period by each FLSA Settlement Class Member will be divided by the total workweeks worked during the Class Period for all FLSA Settlement Class Members, resulting in the Payment Ratio for each FLSA Settlement Class Member.  Each FLSA Settlement Class Member's Payment Ratio is then multiplied by the Net Settlement Amount allocated to the FLSA Settlement Class to determine the proportionate allocation. All unclaimed amounts shall be distributed to FLSA Settlement Class members who participate in the settlement.

Each Settlement Share will be reduced by any legally mandated employee tax withholdings (e.g., employee payroll taxes, etc.) for each Settlement Class Member.  Settlement Class Members are not eligible to receive any compensation other than the Settlement Share from this Settlement. Settlement Shares shall be paid to Settlement Class Members from the Net Settlement Amount no later than ten (10) days after Defendant provides the funds to the Settlement Administrator for disbursement under this Agreement.

E.    <u>Challenges to Calculations and Inclusion in the Settlement Class</u>.  A Settlement Class Member may dispute the amount of his or her Settlement Share, and the data used to calculate the Settlement Share, by timely sending a written notice to the Settlement Administrator informing the Settlement Administrator of the nature of the dispute and providing any records or documentation supporting the Settlement Class Member's position.  In response to such a dispute, Defendants will first verify the information contained in Defendants' records. Class Counsel and Defense Counsel will then make a good faith effort to resolve the dispute

Exhibit 1

informally.  If counsel for the Parties cannot agree, the dispute shall be resolved by the Settlement Administrator, who shall examine the records provided by the Defendants and the Settlement Class member.  The Settlement Administrator's determination regarding any such dispute shall be final.  A dispute regarding the Settlement Share or the underlying data used to calculate the Settlement Share shall be considered timely if received by the Settlement Administrator postmarked within thirty (30) days of Class Notice being mailed.

If, before the Response Deadline, an individual not previously identified as a member of the Settlement Class provided to the Settlement Administrator (a "Non-Disclosed Potential Class Member") asserts his/her right to membership in the Settlement Class and seeks recovery under the Settlement, the Settlement Administrator shall provide all counsel with the evidence provided by the Non-Disclosed Potential Class Member.  To be eligible for recovery under this Settlement Agreement, each Non-Disclosed Potential Class Member must provide acceptable proof (documentation or declaration(s)) to the Settlement Administrator supporting his/her request for inclusion in the Settlement Class, including specific evidence establishing that he/she qualifies as a Settlement Class Member, as defined in this Agreement.

If Defendant disagrees with Class Counsel that any Non-Disclosed Potential Class Member is, in fact, a Settlement Class Member, the Parties agree that the Settlement Administrator will resolve the issue based solely upon written submissions by each Party.  If both Class Counsel and Defense Counsel jointly agree that the Non-Disclosed Potential Class Member is not a member of the Settlement Class, the Settlement Administrator is authorized to notify the Non-Disclosed Potential Class Member that his/her request for inclusion in the Settlement Class has been rejected.

## VI.  BINDING EFFECT; EXCLUSION AND OBJECTION RIGHTS

A.  <u>Right of Settlement Class Members to be Excluded</u>: Any Settlement Class Member, other than Plaintiff, may elect to be excluded from the Settlement Class at any time before the Response Deadline.  To be effective, the Settlement Class Member must submit a valid request for exclusion (in compliance with the exclusion procedures set forth in the Class Notice) to the Settlement Administrator and postmarked on or before the end of the Response Deadline.  The date of the postmark on the mailing envelope shall be the exclusive means to determine whether a request for exclusion is timely (if there is no postmark, a timely submitted declaration from the individual requesting exclusion, wherein the individual states the date on which her or she mailed his or her request for exclusion, shall suffice to establish the date on which the individual mailed his or her request for exclusion).  Any Settlement Class Member who timely requests exclusion in compliance with these requirements: (i) shall not have any rights under this Agreement; (ii) shall not be entitled to receive a Settlement Share; and (iii) shall not be bound by this Agreement, the Final Approval Order, or the Judgment.

B.  <u>Binding Effect on Final Settlement Class Members</u>: Except for those Settlement Class Members who exclude themselves in compliance with the procedures set forth above, all Settlement Class Members will be deemed to be members of the Final Settlement Class for all purposes under this Agreement; will be bound by the terms and conditions of this Agreement, the Final Approval Order, the Judgment, and the releases provided herein; and, except as provided in section VI.C., below, will be deemed to have waived all objections and opposition to the fairness, reasonableness, and adequacy of the settlement.

C.  <u>Right to Object</u>: Any Final Settlement Class member, other than Plaintiff, may object to this Settlement, provided that such objections are made in a writing and mailed to the

Exhibit 1

Court, Settlement Administrator, Class Counsel and Defense Counsel so that it is postmarked no later than the last day of the Response Deadline. Such objection shall include the name and address of the objector, dates of employment, and the basis for any objection and, if the objector is represented by counsel, the name and address of the objector's counsel. No Final Settlement Class member may be heard at the Final Settlement Hearing who has not complied with this requirement and any Final Settlement Class member who fails to comply with this requirement will be deemed to have waived any right to object to the Settlement. Moreover, any class member whose objection is overruled will be deemed to have waived any right to separate action and will be deemed to be a Settlement Class Member subject to the terms of this Agreement.

       D.    <u>Communication Between Counsel Regarding Objections and Exclusions</u>: Upon receipt, counsel for the Parties shall promptly disclose to each other copies of all requests for exclusion and/or objections to the Settlement or to any part thereof. Class Counsel and Defense Counsel shall file any responses to any written objections submitted to the Court in accordance with this Settlement Agreement at least five (5) days before the final approval hearing.

       E.    <u>Prohibition on Filing Complaints or Proceedings Pending Final Approval</u>: From the date of entry of the Preliminary Approval Order through the date of the final approval hearing, Settlement Class Members, including the Plaintiff, who do not exclude themselves from the Settlement Class or successfully object to this Settlement shall be prohibited from receiving any monetary recovery from a complaint or charge of any kind filed with the California Division of Labor Standards Enforcement or from initiating any lawsuit or other legal proceeding regarding any of the Released Claims as defined in this Agreement.

       F.    <u>Covenant Not to Sue or Participate in Any Other Action</u>: Subject to the Court's granting final approval, any Settlement Class Member who does not exclude him or herself from the Settlement in compliance with the procedures set forth above shall be forever barred from filing any other action or proceeding or participating either as a named plaintiff or as an unnamed class member in any other lawsuit, including a class action, collective action, and/or representative action in any state or federal court or administrative tribunal as permitted by law regarding any of the Released Claims as defined herein. Notwithstanding the foregoing, nothing herein shall prevent any Settlement Class Member, including Plaintiff, from participating in the settlements reached in *Paul Perez et al. v. Winn Management Group et al.* (Case No. S-1500-CV-282610) or *Stephanie Harrington v. Winn Management Group et al.* (Case No. BCV-15-101210), which are pending in the Superior Court for the State of California, County of Kern.

## VII.   <u>FINAL SETTLEMENT APPROVAL</u>

      A hearing shall be held for the purpose of obtaining the Final Approval Order and entry of Judgment approving this Settlement Agreement and releasing the claims of the Final Settlement Class. The date of the hearing shall be set by the Court and notice of such shall be provided to Settlement Class Members in the Class Notice, although such hearing may be continued by the Court without further notice to Settlement Class Members.

      On the date set forth for the final approval hearing in the Order granting Preliminary Approval of the Settlement, a final approval hearing shall be held before the Court in order to consider and determine whether (i) the Court should give final approval to this Settlement; (ii)

Exhibit 1

Plaintiff's application for an incentive payment should be granted; (iii) Class Counsels' application for attorney's fees and expenses should be granted; and (iv) any timely objections made have any merit and to consider all responses by Class Counsel and Defense Counsel.

Upon final approval of the Settlement by the Court, the Parties request that the Court enter an Order and judgment as follows:

1. Approving the Settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

2. Approving Class Counsel's application for an award of attorney's fees and costs;

3. Approving the incentive payment to the Plaintiff; and

4. Entering final judgment, permanently barring and enjoining all members of the Final Settlement Class from prosecuting against Defendant, and its past, present and future parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint ventures, affiliated organizations, insurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, partners, joint ventures, benefit plans sponsored or administered by Defendant, divisions, units, branches and other persons or entities acting on their behalf any individual, class, or representative claim released herein, upon satisfaction of all payments and obligations hereunder.

## VIII. <u>SETTLEMENT TERMINATION</u>

A. <u>Grounds for Settlement Termination</u>: In accordance with the procedures specified herein, this Agreement may be terminated on the following grounds:

1. Any Party may terminate the Agreement if the Court declines to enter the Preliminary Approval Order (incidental or minor changes to the Class or Class Notice ordered by the Court are not grounds for termination), Final Approval Order or Judgment in substantially the form submitted by the Parties, or the Settlement as agreed does not become final for any other reason. The terminating Party shall give written notice to the other Party no later than ten (10) days after the Court acts. The recovery of attorney's fees and costs by Class Counsel and the incentive payment to the Plaintiff are terms of this Agreement, but the allowance or disallowance by the Court of an award of attorney's fees and/or costs and/or the incentive payment to the Plaintiff shall not be grounds for terminating this Settlement.

2. If five percent (5%) or more of the Settlement Class makes a valid request to be excluded from the Class, Defendant will have the right, but not the obligation, to void the Agreement. If Defendant exercise the right to void the Agreement, then the Parties will have no further obligations under the Agreement, including any obligation by Defendant to pay the Maximum Settlement Amount, or any amounts that otherwise would have been owed under this Agreement, except that Defendant will pay the Settlement Administrator's reasonable fees and expenses incurred as of the date that Defendant exercises its right to void the Agreement. Defendant will notify Class Counsel, in writing via USPS and email, whether it is exercising its right to void the Agreement no later than fifteen (15) days after the Settlement Administrator notifies the Parties of the final total number of valid requests to be excluded.

Exhibit 1

B.   Effect of Termination: Valid Termination shall have the following effects:

1.   The Settlement Agreement shall be terminated and shall have no force or effect, and no Party shall be bound by any of its terms, except as otherwise provided for herein;

2.   The Preliminary Approval Order, Final Approval Order and Judgment, including any order of class certification, shall be vacated;

3.   The Settlement Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Action prior to the Settlement; and

4.   Neither this Settlement Agreement, nor filings in furtherance of the Settlement shall be admissible or offered into evidence in the Action or any other action for any purpose whatsoever.

## IX.   SETTLEMENT PAYMENTS

A.   Defendant' Settlement Payment Obligations: In full and complete Settlement of the Action, subject to this Settlement being approved by the Court and Judgment being entered, and within ten (10) days of the Final Effective Date, Defendant shall forward an aggregate sum not to exceed Two Hundred Fifty Thousand Dollars and Zero Cents ($250,000.00) (the "Maximum Settlement Amount") to the Settlement Administrator, to be deposited by the Settlement Administrator into an interest bearing account and allocated as follows:

1.   Reasonable attorney's fees and litigation expenses:  Class Counsel may request that the Court award them reasonable attorney's fees in an aggregate amount up to and including thirty-three and one-third percent (33 1/3%) of the Maximum Settlement Amount. Class Counsel will recommend to the Court that it award up to a maximum of Eighty-Two Thousand Five Hundred Dollars and Zero Cents ($82,500.00) in attorney's fees to MICHAEL MALK, ESQ., APC.  Class Counsel will also ask the Court to award reasonable litigation costs incurred in prosecuting the Litigation of up to Fifteen Thousand Dollars and Zero Cents ($15,000.00).  Defendant has agreed not to oppose such requests.  The award of reasonable attorney's fees and litigation costs granted by the Court will be paid out of the Maximum Settlement Amount.  Any award of attorney's fees and costs shall include and satisfy all past and future fees and costs incurred to prosecute, settle and administer the Action and this Settlement Agreement, including obtaining the Final Approval Order and Judgment.

2.   Reasonable expenses of the Settlement Administrator:  All costs of administering the Settlement, including, but not limited to, the duties provided in Section IV.B above ("Settlement Administration Costs"), shall be paid by Defendant directly to the Settlement Administrator, and shall not be deducted from the Maximum Settlement Amount.

3.   Reasonable incentive payment to Plaintiff:  Class Counsel will request that the Court award a reasonable incentive payment not to exceed Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) to Plaintiff, to be paid out of the Maximum Settlement

Exhibit 1

Amount, and Defendant has agreed not to oppose this request.  This payment is in addition to the Plaintiff's Settlement Share to which he may be entitled as a member of the Final Settlement Class.  Plaintiff will receive an IRS Form 1099 for the portion of the Settlement distributed to him that represents his incentive payment.  Plaintiff shall be responsible for properly declaring such income to the appropriate taxing authorities, and for paying any taxes due on such amounts.  In exchange for this incentive payment, Plaintiff will enter into a binding release of all claims.

4.     The Parties agree that Five Thousand Dollars and Zero Cents ($5,000.00) of the Maximum Settlement Amount is in consideration for a full and complete release of any claim that penalties may be owed pursuant to PAGA for the alleged violations of the Labor Code and/or Wage Orders that were or could have been asserted in the Action.  California Labor Code section 2699(i) requires that the parties distribute any settlement of PAGA claims as follows: seventy-five percent (75%) to the LDWA for enforcement of labor laws and education of employers; and twenty-five percent (25%) to "aggrieved employees."  The Parties, therefore, agree that Three Thousand Seven Hundred Fifty Dollars and Zero Cents ($3,750.00) shall be paid to the LWDA from the Maximum Settlement Amount and that the remaining One Thousand Two Hundred Fifty Dollars and Zero Cents ($1,250.00) shall be part of the Net Settlement Amount to be distributed in accordance with the terms of this Agreement.

5.     <u>Allocations to Final Settlement Class Members</u>: The Net Settlement Amount shall be used to fund all Settlement Shares due to any Final Settlement Class Members as provided herein.  All interest earned on the account opened by the Settlement Administrator shall inure to the benefit of the Class.

6.     <u>Allocations of settlement payments and taxes</u>.  All Settlement Shares paid to the Final Settlement Class under this Settlement shall be issued via check(s) and allocated as follows: (a) for the California Class, forty percent (40%) shall be allocated as wages and sixty percent (60%) shall be allocated as non-wages; and (b) for the FLSA Class, fifty percent (50%) shall be allocated as wages and fifty percent (50%) shall be allocated as non-wages.  Any amounts paid for non-wages shall not be subject to tax withholding.  Defendants shall not make as part of this Agreement, nor be required to make any deductions, nor pay any monthly contributions for any insurance, retirement, 401(k), or profit sharing plans related to monies paid as a result of this Settlement Agreement.

7.     <u>Timing of payment of settlement shares</u>.  Payment of Settlement Shares shall be made in accordance with the following subparagraphs:

a.     Within ten (10) days after entry of the Final Approval Order, the Settlement Administrator shall provide to the Parties a written statement of how the Maximum Settlement Amount will be allocated.  The allocation shall include attorney's fees and litigation costs of Class Counsel as awarded by the Court, an incentive payment to the Plaintiff as awarded by the Court, settlement administration expenses, the total of all payments to be paid to all eligible Final Settlement Class members, and the payment to the LWDA and all parties' and class members' required payroll taxes (including FICA and FUTA).

Exhibit 1

b.      Within ten (10) days of the Final Effective Date, the Settlement Administrator shall issue to each qualifying Final Settlement Class member a check in the amount of his or her Settlement Share (less applicable taxes) via first-class mail.  Checks not negotiated within one hundred twenty (120) days from their issue are void, but this Agreement and the release herein will nonetheless be binding as if they had cashed the checks.  Any unclaimed funds in the Settlement Administrator's account as a result of the failure to timely cash Settlement Share checks shall be distributed by the Settlement Administrator to the State of California, California Department of Industrial Relations Unpaid Wage Fund, in the Final Settlement Class Members' names to be held as unclaimed property for the benefit of the affected Final Settlement Class Members.

c.      Class Counsel will advise Defendant and the Settlement Administrator as to the amount of attorney's fees and costs payments awarded by the Court.  Class Counsel shall also advise Defendant and the Settlement Administrator as to how the incentive payment shall be paid to the Plaintiff, whether by check sent directly to the Plaintiff or provided to Class Counsel.  Within ten (10) days of the Final Effective Date, the Settlement Administrator shall distribute the Class Counsel fees and costs and the enhancement award.

d.      Within ten (10) days of the Final Effective Date, the Settlement Administrator shall make payment to the LWDA as provided herein.

B.      <u>Taxes</u>.  Upon receipt of the Maximum Settlement Amount from Defendant, the Settlement Administrator shall promptly (but no later than three days later) deposit the funds into an interest bearing bank account, held in escrow for the purpose of effectuating this Settlement.  The Parties agree to treat this account as a "Qualified Settlement Fund" pursuant to section 468(13) of the Internal Revenue Code of 1986, as amended, and the Settlement Administrator shall treat the Qualified Settlement Fund as the "employer" for purposes of federal and state income and employment tax withholding and reporting with respect to the Settlement Shares.

The Settlement Administrator shall be responsible for ensuring that all taxes associated with the Agreement are timely paid to the appropriate authorities.   The Settlement Administrator's responsibilities include the following: performing all tax reporting duties required by federal, state or local law pertaining to the Settlement Administrator's duties as set forth in subsections IV.B. above.  In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph.  Such elections shall be made in compliance with the procedures and requirements contained in the QSF regulations.  It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver all necessary documentation for signature as may be required, and thereafter to cause the appropriate filing of such documentation to occur.  To the extent that, for any period of time, the QSF is not treated as a "Qualified Settlement Fund" within the meaning of the U.S. Treasury Regulations 1.468B-1 and 1.468B-5, the Settlement Administrator shall promptly notify Class Counsel and Counsel for Defendant of that fact.

Each party to this Agreement (for purposes of this section, the "Acknowledging Party;" and each party to this Agreement other than the Acknowledging Party, an "Other Party") acknowledges and agrees that: (1) no provision of this Agreement, and no written

Exhibit 1

communication or disclosure between or among the parties or their attorneys and other advisors, is or was intended to be, nor shall any such communication or disclosure constituted or be construed or be relied upon as, tax advice within the meaning of the United States Treasury Department Circular 230 (31 CFR Part 10, as amended); (2) the Acknowledging Party (a) has relied exclusively upon his, her, or its own, independent legal and tax advisors for advice (including tax advice) in connection with this Agreement; (b) has not entered into this Agreement based upon the recommendation of any Other Party or any attorney or advisor to any Other Party; and (c) is not entitled to rely upon any communication or disclosure by any attorney or advisor to any Other Party to avoid any tax penalty that may be imposed on the Acknowledging Party; and (3) no attorney or advisor to any Other Party has imposed any limitation that protects the confidentiality of any such attorneys' or advisor's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the Acknowledging Party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.  Settlement Class Members shall hold harmless Defendant from any and all actions, claims or demands brought by any tax or other authority based upon Participating Class Members' tax obligations arising from the payment to be made pursuant to this Settlement, and shall reimburse Defendant for any taxes, interest, and penalties paid by Defendant as a result of any such actions, claims or demands.

C.      No Additional Contribution by Defendant: Defendant's monetary obligation under this Agreement is limited to the Maximum Settlement Amount, the Claims Administrator's administrative costs, and its share of applicable employer taxes.  Defendant may not be called upon or required to contribute additional monies under any circumstances whatsoever.  All other costs and expenses arising out of or in connection with the performance of this Agreement shall be paid from the Maximum Settlement Amount.  If this Agreement is cancelled, rescinded, terminated, voided, or nullified, or the Settlement of the Action is barred by operation of law, or invalidated, or ordered not to be carried out by a court of competent jurisdiction, Defendant will cease to have any obligation to pay any portion of the Maximum Settlement Amount to anyone under the terms of this Agreement and all previous disbursements from the Maximum Settlement Amount will be immediately paid back to Defendant by the person or entity who received such disbursement, except for Settlement Administration Costs.

D.      No Claims Resulting from Payments: No person shall have any claim of any kind whatsoever against any of the Parties, Defense Counsel, Class Counsel, any Settlement Class Member, or the Settlement Administrator, based on distribution of any Settlement Share made in accordance with this Agreement.

## X.      RELEASE OF CLAIMS; WAIVER; ASSIGNMENT OF RIGHTS

A.      Release: Effective as of the Final Effective Date and in exchange for the consideration provided pursuant to this Agreement, Plaintiff and each member of the Final Settlement Class and their respective heirs, attorneys, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns (collectively, the "Releasing Persons") hereby forever completely release and discharge Defendant and their past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint ventures, affiliated organizations, insurers and assigns,

Exhibit 1

including but not limited to WinnResidential California L.P., and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, partners, joint ventures, benefit plans sponsored or administered by Defendant, divisions, units, branches and other persons or entities acting on their behalf (collectively, the "Released Parties"), from any and all of the following claims (collectively the "Released Claims"):

1.    With respect to those Final Settlement Class Members that worked for Defendant in California during the Class Period, any and all claims, demands, rights, liabilities, expenses, and losses that arise from, could have been raised and touch or concern the allegations in the Action that any of the Releasing Persons have or might have against any of the Released Parties at any time through the Class Period, including but not limited to claims for unpaid overtime, inaccurate wage statements, failure to timely pay final wages, unfair business practices, alleged violations of PAGA, and all related statutory claims, including but not limited to alleged violation of California Labor Code sections 201-204, 226, 226.3, 510, 1194, 2698, 2699, California Business and Professions Code sections 17000 and 17200 *et. seq.*, the relevant Wage Orders issued by the Industrial Welfare Commission, or any other claim for any statutory or civil penalty that could have been asserted based on the facts alleged in the Action under California law that arise from the allegations as pled in the operative complaint in the Action.

2.    Any claims for restitution, liquidated damages, disgorgement, conversion, unjust enrichment, interest, or equitable relief and/or for penalties of any kind arising under state or federal law with respect to the claims that were asserted or could have been reasonably asserted from the facts alleged in the Action on behalf of the Settlement Class;

3.    With respect to only those Final Settlement Class Members who cash their Settlement Share checks, the Released Claims shall also include any and all claims under the Fair Labor Standards Act ("FLSA") or that could have been asserted based on the facts alleged in the Action under federal law that arise from the allegations pled in this Action;

4.    Any claim for attorney's fees or costs against any of the Released Parties.

Each Final Settlement Class Member that worked for Defendant in California during the Class Period will acknowledge that he/she has read Section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

This general release language does not release claims which are not within the definition of Released Claims.   Each Final Settlement Class Member that worked for Defendant in California during the Class Period shall further warrant that he/she understands that Section 1542 gives him/her the right not to release existing claims of which he/she is not now aware, unless he/she voluntarily chooses to waive this right.  Limited to the scope of the Released Claims, each applicable Class Member shall voluntarily waive the rights described in Section 1542, and elect to assume all risks as set forth herein that now exist in his/her favor, known or unknown.

Exhibit 1

B.      This release shall not apply to claims for unemployment and/or for workers' compensation, or claims that cannot be released as a matter of law.

C.      <u>Assignment</u>: Plaintiff, for  himself and on behalf of the other Releasing Persons, represent and warrant that nothing which would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated.

D.      <u>Waiver of Appeal</u>: Any Final Settlement Class Member who does not timely submit an objection to the Settlement hereby waives any and all rights to appeal from the Final Approval Order and Judgment, including all rights to any post-judgment proceeding and appellate proceeding such as a motion to vacate judgment, motion for new trial, and extraordinary writs.  This waiver does not include a waiver of the right to oppose any appeals, appellate proceedings or post judgment proceedings, if any.

E.      <u>Plaintiff's General Release</u>: As a material inducement to Defendant to enter into this Agreement, Plaintiff does hereby, for himself and his spouse, heirs, successors, and assigns, forever release the Released Parties from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including back wages, penalties, liquidated damages, and attorney's fees and costs actually incurred) of any nature whatsoever, from the beginning of time through the date of Preliminary Approval, known or unknown, suspected or unsuspected, including but not limited to all claims arising out of, based upon, or relating to his hiring by, employment with, separation of employment with, or otherwise relating to Released Parties.  Plaintiff's Released Claims include, but are not limited to, claims arising from or dependent on the California Labor Code; the Wage Orders of the California Industrial Welfare Commission; California Business and Professions Code section 17200 *et seq.*; the Fair Labor Standards Act; the California Fair Employment and Housing Act, California Government Code § 12900 *et seq.*; the California Civil Code and Code of Civil Procedure, the California common law of contract and tort; Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; the FLSA, 29 U.S.C. § 201 *et seq.* and the Portal to Portal Act, 29 U.S.C. § 251 *et seq.*

Plaintiff agrees that there is a risk that each and every injury that he may have suffered by reason of the Released Parties' relationship with him might not now be known, and there is further risk that said injuries, whether known or unknown at the date of this Agreement, might possibly become progressively worse, and that as a result thereof further damages may be sustained by him.  Nevertheless, Plaintiff desires to forever and fully release and discharge the Released Parties, and understand that by the execution of this Agreement no further claims for any such injuries that existed at the time of the execution of this Agreement may ever be asserted by Plaintiff.  Plaintiff expressly waives and relinquishes all rights and benefits afforded by section 1542 of the Civil Code of the State of California and does so understanding and acknowledging the significance of such specific waiver of section 1542.  Section 1542 of the Civil Code of the State of California states as follows:

Exhibit 1

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Thus, subject to and in accordance with this Agreement, even if Plaintiff may hereafter discover facts in addition to or different from those which they now know or believe to be true, Plaintiff, upon the Final Effective Date, shall be deemed to have fully, finally, and forever settled and released any and all claims against the Released Parties which were alleged or could have been alleged in the Action, as well as any other claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, upon any theory of law or equity, including without limitation, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Notwithstanding the foregoing, nothing herein shall prevent Plaintiff from participating in the class action settlement reached in the related case of *Stephanie Harrington v. Winn Management Group et al.* (Case No. BCV-15-101210), now pending in the Superior Court for the State of California, County of Kern.

## XI.   INADMISSIBILITY OF SETTLEMENT AGREEMENT/DENIAL OF LIABILITY

This Agreement is the result of a good-faith compromise of disputed claims, and neither it nor any statement or conduct in furtherance of the Settlement shall be offered or construed to be an admission or concession of any kind by any Party. In particular, but without limiting the generality of the foregoing, nothing about this Settlement shall be offered or construed as an admission of liability, wrongdoing, impropriety, responsibility, or fault whatsoever by Defendants, who expressly denies any liability, wrongdoing, impropriety, responsibility, or fault whatsoever. In addition, and also without limiting the generality of the foregoing, nothing about this Settlement shall be offered or construed as an admission or evidence of the propriety or feasibility of certifying a class in the Action or any other action for adversarial, rather than settlement purposes. The Parties further agree that if, for any reason, the Settlement is not approved, the certification will have no force or effect and will be immediately revoked.

## XII.   NO PUBLICITY

Plaintiff and his counsel agree that they have not and will not publish the Parties' agreement to resolve the claims asserted by Plaintiff and the putative class (the "Resolution"). Plaintiff's counsel shall not report the Resolution in any medium or in any publication, shall not post or report anything regarding the claims of Plaintiff or the putative class or the Resolution on their website, and shall not contact any reporters or media regarding the Resolution. Plaintiff's counsel can, however, discuss the Resolution with Plaintiff and the putative class and can cite to the Resolution as evidence of his class action experience in court filings in other actions.

Exhibit 1

**XIII.  INTERIM STAY OF PROCEEDINGS**

Pending completion of the settlement process, the Parties agree to a stay of all proceedings in the Action except such as are necessary to implement the Settlement itself.

**XIV.  NOTICES**

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and, except as provided elsewhere in this Agreement or in any communication to the Settlement Class, shall be delivered personally or via postage prepaid first-class mail as follows:

    A.    If to Plaintiff or Class Counsel, then to:

        Michael Malk, Esq.
        MICHAEL MALK, ESQ., APC
        1180 South Beverly Drive, Suite 302
        Los Angeles, CA 90035
        Tel.: (310) 203-0016
        Email: mm@malklawfirm.com

    B.    If to Defendant or Defense Counsel, then to:

        Mark Jacobs, Esq.
        Shaun J. Voigt, Esq.
        Fisher & Phillips LLP
        2050 Main Street, Suite 1000
        Irvine, California 92614
        Tel.: 949-798-2106
        Email: mjacobs@fisherphillips.com
              svoigt@fisherphillips.com

**XV.  RESOLUTION OF DISPUTES ARISING FROM PREPARATION OF SETTLEMENT AGREEMENT**

Any disputes arising from the preparation of a final stipulation for settlement, shall be resolved by the Parties, although they may seek guidance from Robert Kaplan, Esq.

**XVI.  RETENTION OF JURISDICTION BY THE COURT**

Following entry of the Final Approval Order and Judgment pursuant to this Settlement Agreement, the Court shall retain jurisdiction for the purpose of addressing any issues which may arise with respect to settlement administration or the enforcement of the terms of this Settlement Agreement.

Exhibit 1

## XVII.  ENTIRE AGREEMENT

This Settlement Agreement and its associated Exhibit set forth the entire agreement of the Parties with respect to their subject matter and supersede any and all other prior agreements and all negotiations leading up to the execution of this Settlement Agreement, whether oral or written, regarding the subjects covered herein.  The Parties acknowledge that no representations, inducements, promises or statements relating to the subjects covered herein, oral or otherwise, have been made by any of the Parties or by anyone acting on behalf of the Parties which are not embodied or incorporated by reference herein, and further agree that no other agreement, covenant, representation, inducement, promise or statement relating to the subjects covered herein not set forth in writing in this Settlement Agreement.

## XVIII. MODIFICATION OR AMENDMENT

This Settlement Agreement may not be modified, amended or altered except in a writing signed by each Party whose rights or obligations hereunder would be affected thereby or by that Party's authorized legal representative, or as ordered by the Court.

## XIX.   CHOICE OF LAW

This Settlement Agreement shall be governed by and construed, enforced and administered in accordance with the laws of the State of California, without regard to its conflicts-of-law rules.

## XX.    CONSTRUCTION

This Agreement is entered into freely and voluntarily without duress or undue pressure or influence of any kind or nature whatsoever and neither Party has relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement. Each Party has been represented by counsel in the settlement negotiations leading up to, and in connection with the preparation and execution of, this Settlement Agreement.  The Parties acknowledge and agree that all Parties had an equal hand in drafting this Agreement so that it shall not be deemed to have been prepared or drafted by one Party or another.  All Parties waive the provisions of California Civil Code section 1654 (and any other equivalent state, federal, or local provision), which provides, in part, that "the language of a contract should be interpreted most strongly against the Party who caused the uncertainty to exist."

## XXI.  EXECUTION IN COUNTERPARTS

This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  Any signature to this Agreement transmitted by facsimile and any copies of any signatures are valid and binding.

## XXII. AUTHORITY

The individual signing this Agreement on behalf of Defendant represents and warrants that he/she is authorized to do so.  The Parties likewise represent and warrant that they have the

Exhibit 1

authority to execute this Agreement and to take all appropriate action required and permitted to be taken by this Agreement, except such action that is the prerogative of the Court.

## XXIII. REASONABLE COOPERATION

The Parties shall provide reasonable cooperation with one another and the Settlement Administrator in implementing this Settlement, including but not limited to providing information and executing documents necessary to effectuating its purpose. No party, nor any of its attorneys or agents, shall solicit or encourage any Settlement Class members to exclude themselves from the Settlement or object to the Settlement.

## XXIV. BINDING EFFECT

This Settlement shall be enforceable, binding upon and inure to the benefit of the respective parties hereto, his or their respective legal successors, heirs, administrators, executors, assigns and each of them.

## XXV. NO PRIOR ASSIGNMENT

The parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

## XXVI. MISCELLANEOUS

A.    Headings: The headings in this Agreement are included for convenience only and shall not be given weight in its construction.

B.    Signatures: Facsimile transmissions of the signatures or digital signatures of the Parties or their representatives shall be binding on the Parties.

**IN WITNESS WHEREOF**, this Settlement Agreement has been duly executed by and on behalf of the Parties as of the date last written below.

DATED: _11-15-16_

ADAM GOODWIN

WINN MANAGEMENT GROUP LLC

DATED: _____

By: _____

Exhibit 1

## XXIII. REASONABLE COOPERATION

The Parties shall provide reasonable cooperation with one another and the Settlement Administrator in implementing this Settlement, including but not limited to providing information and executing documents necessary to effectuating its purpose. No party, nor any of its attorneys or agents, shall solicit or encourage any Settlement Class members to exclude themselves from the Settlement or object to the Settlement.

## XXIV. BINDING EFFECT

This Settlement shall be enforceable, binding upon and inure to the benefit of the respective parties hereto, his or their respective legal successors, heirs, administrators, executors, assigns and each of them.

## XXV.  NO PRIOR ASSIGNMENT

The parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

## XXVI. MISCELLANEOUS

A.     Headings: The headings in this Agreement are included for convenience only and shall not be given weight in its construction.

B.     Signatures: Facsimile transmissions of the signatures or digital signatures of the Parties or their representatives shall be binding on the Parties.

**IN WITNESS WHEREOF,** this Settlement Agreement has been duly executed by and on behalf of the Parties as of the date last written below.


DATED: _____          _____
                                  ADAM GOODWIN


                                  WINN MANAGEMENT GROUP LLC
                                  By: Winn Manager Corp., its Manager

DATED: 11|15|2016          By: _____
                                  Gilbert J. Winn, President

# Exhibit 1

**APPROVED AS TO**
**FORM & CONTENT:**

MICHAEL MALK, ESQ., APC


By: _Michael Malk_____
   Michael Malk, Esq.
   Counsel for Plaintiff Adam Goodwin
   and Class Counsel


**APPROVED AS TO**
**FORM & CONTENT:**

FISHER & PHILLIPS LLP


By:_____
   Mark J. Jacobs, Esq.
   Shaun J. Voigt, Esq.
   Counsel for Defendant Winn
   Management Group LLC

20

Exhibit 1

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA

*Adam Goodwin v. Winn Management Company*, Case No. 1:15-cv-00606-GSA

Indicate Name/Address Changes, if any:

<<Name>>

«Address»

<<City>>, <<State>> <<Zip Code>>

XX - XX - __ __ __ __

**YOU MAY BE ENTITLED TO RECEIVE MONEY FROM A SETTLEMENT.  WINN WILL NOT RETALIATE AGAINST YOU FOR PARTICIPATING IN THIS SETTLEMENT.**

**THIS NOTICE AFFECTS YOUR RIGHTS. PLEASE READ IT CAREFULLY.**

*A Federal court authorized this notice.  This is not a solicitation from a lawyer.*

YOU ARE HEREBY NOTIFIED that a proposed settlement ("the Settlement") of the above-captioned class action ("the Action") filed in the United States District Court for the Eastern District of California has been reached by the Parties and has been granted Preliminary Approval by the Court supervising the Action.  The Court has ordered that this Class Notice be sent to you because you may be a Settlement Class member (defined below). The purpose of this Class Notice is to inform you of the Settlement of this class action and your legal rights under the Settlement as follows:

- WINN MANAGEMENT GROUP, LLC ("Defendant") has agreed to settle a lawsuit brought by a former hourly employee on behalf of the following class members ("Settlement Class"):

  o All non-exempt employees who worked for Defendant in California and both i) received non-discretionary compensation and ii) worked over 8 hours in a day or 40 hours in a week in at least one pay period between April 16, 2011 through [date of preliminary approval] (the "California Class"); and

  o all non-exempt employees who worked for Defendant in the United States (except for California) and both i) received non-discretionary compensation and ii) worked over 40 hours in a week in at least one pay period between April 16, 2012 and [date of preliminary approval] (the "FLSA Class").

- The proposed settlement resolves the following claims:

  o For the California Class: claims for unpaid overtime, inaccurate wage statements, failure to timely pay final wages, unfair business practices, alleged violations of the Private Attorney General Act, and all related statutory claims and penalties. Individuals who cash their settlement check(s) will also release all claims under the Fair Labor Standards Act.

  o For the FLSA Class: individuals that timely submit a claim form will release all claims under the Fair Labor Standards Act.

  o The settlement avoids costs and risks to you from continuing the lawsuit; pays money to employees; and releases Defendant from liability for these claims.

- The two sides disagree on whether Defendant is liable for the allegations raised in this case and how much money could have been won if the employees won at trial.

1

Exhibit A

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **Get a Payment** | California Class members who are employed by Defendant as of [date on which Preliminary Approval], as well as Plaintiff, are not required to file claims to be eligible to receive a payment if you do not exclude yourself from the settlement. |
| | All California Class members who are no longer employed by Defendant as of [date on which Preliminary Approval], as well as all FLSA Class members must complete and return a valid claim form in order to participate in the settlement. |
| | After final approval by the Court, the payment for Settlement Class members that do not exclude themselves will be mailed to you at the same address as this notice.  If your address has changed, please notify the Settlement Administrator as explained below. |
| **Exclude Yourself** | Get no payment. Send a letter to the Settlement Administrator as provided below. This is the only option that allows you to bring your own claim against Defendants about the legal claims in this case.  The Settlement will bind all class members who do not request exclusion. |
| **Object** | Write to the Court about why you do not like the settlement or appear at the final approval hearing to explain your objection.  Directions are provided below. |

## WHY DID YOU RECEIVE THIS NOTICE?

This notice explains a proposed settlement of a lawsuit, and informs you of your legal rights under that proposed settlement.  You are receiving this notice because you may be a member of a class on whose behalf this lawsuit has been brought.

## WHAT IS THIS LAWSUIT ABOUT?

On April 17, 2015, Plaintiff Adam Goodwin ("Named Plaintiff or Plaintiff") filed this lawsuit in United States District Court, Central District of California, on behalf of the Settlement Class.  The lawsuit alleges that Defendant failed to pay its non-exempt hourly employees 1.5 times the regular rate of pay for overtime, *i.e.* it did not include non-discretionary bonuses and commissions in the regular rate of pay when paying overtime members of the Settlement Class.  As a result, Plaintiff alleges that he and members of the Settlement Class were not paid all overtime wages, were not issued accurate wage statements, and were not paid all wages timely upon their separation of employment. The lawsuit seek recovery of wages, restitution, statutory and civil penalties, interest, attorneys' fees and costs.

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in the lawsuit and further denies that, for any purpose other than that of settling this lawsuit, the lawsuit is appropriate for class treatment.  Defendant contends, among other things, that they complied at all times with the California Labor Code, the California Business and Professions Code, the Fair Labor Standards Act, and all other applicable law.  The Court has made no ruling and will make no ruling on the merits of the Action and its allegations and claims.

2

Exhibit A

## SUMMARY OF THE SETTLEMENT

### A.    Why is there a Settlement?

The Court did **not** decide in favor of the Plaintiff or Defendants.  Plaintiff thinks he would have prevailed on his claims at a trial.  Defendant does not think that Plaintiff would have won anything from a trial.  But there was no trial.  Instead, both sides agreed to a settlement.  That way, they avoid the costs, risks, and uncertainty of trial, and the class members will get compensation.  Plaintiff and his attorneys believe the settlement is fair, reasonable and adequate and in the best interests of all class members.

### B.    Who is in the Class?

The Settlement Class consists of the California Class and the FLSA Class, defined above.

### C.    What does the Settlement provide?

#### 1.    Settlement Amount.

Defendant will pay a total of $250,000 to settle the lawsuit ("Settlement Amount").

The following sums will be paid from the Settlement Amount: all Settlement Payments to the members of the Settlement Class, Attorneys' Fees (not to exceed 33.33% of the Settlement Amount), litigation expenses not to exceed $15,000, the PAGA Settlement payment in the amount of $3,750, and an enhancement payment to the Named Plaintiff in the amount of $7,500.

The Settlement Administrator shall cause the Court approved enhancements to Named Plaintiffs Court approved attorney's fees and Litigation costs, and PAGA Settlement to be paid at the same time and manner as the Settlement Payments to the Settlement Class Members.

#### 2.    Net Settlement Amount

"Net Settlement Amount" means the Settlement Amount minus the Attorneys' Fees, Litigation Expenses, the PAGA Settlement payment, and the enhancement payments to the Named Plaintiff.  An estimated $_____is currently allocated as the Net Settlement Amount.

#### 3.    Your Individual Payment Amount.

The Net Settlement Amount shall be allocated proportionally as follows: 56% of the Net Settlement Amount shall be distributed to the California Class, and 44% of the Net Settlement amount shall be distributed to the FLSA Class.  The settlement shares for each member of the Settlement Class not excluding him/ herself will be proportionally based on the number of workweeks, and the settlement share amounts shall be determined by the Settlement Administrator as follows:

- California Class:   The workweeks worked between April 16, 2011 through [date of preliminary approval] by each California Class Member will be divided by the total workweeks worked during this period for all California Class members, resulting in the Payment Ratio for each California Class Member.  Each California Class Member's Payment Ratio is then multiplied by the Net Settlement Amount allocated to the California Settlement Class to determine the proportionate allocation.  All unclaimed amounts shall be distributed on a pro-rata basis to California Class members who participate in the settlement.

3

## Exhibit A

- FLSA Class: The workweeks worked between April 16, 2012 through [date of preliminary approval] by each FLSA Class Member will be divided by the total workweeks worked during this period for all FLSA Class Members, resulting in the Payment Ratio for each FLSA Class Member. Each FLSA Class Member's Payment Ratio is then multiplied by the Net Settlement Amount allocated to the FLSA Settlement Class to determine the proportionate allocation. All unclaimed amounts shall be distributed to FLSA Settlement Class members who participate in the settlement.

Each Settlement Share will be reduced by any legally mandated employee tax withholdings (e.g., employee payroll taxes, etc.) for each Settlement Class member. Settlement Class members are not eligible to receive any compensation other than the Settlement Share. Settlement Shares shall be paid to Settlement Class members from the Net Settlement Amount no later than ten (10) days after Defendant provides the funds to the Settlement Administrator for disbursement under this Agreement.

The average settlement payment for all Settlement Class Members based on number of workweeks is XX. The range of potential recoveries based on number of workweeks is XX.

Currently, it is estimated that based on your number of Eligible Workweeks you will receive a minimum of $_____. This number may change based on how much the court awards in attorney fees' and costs and the number of individuals who ask to be excluded from the settlement.

4.    Tax Matters.

The Settlement Administrator will distribute IRS Forms W-2 and 1099 (and the equivalent California forms) to Settlement Class Members reflecting the payments each Class Member receives under the Settlement. For tax purposes, payments will be allocated as follows: (a) for the California Class, forty percent (40%) shall be allocated as wages and sixty percent (60%) shall be allocated as non-wages; and (b) for the FLSA Class, fifty percent (50%) shall be allocated as wages and fifty percent (50%) shall be allocated as non-wages.

Any amounts paid for non-wages shall not be subject to tax withholding. Forms W-2 and/or Forms 1099 will be distributed at times and in the manner required by the Internal Revenue Code. Interest and penalties paid under this Settlement shall not be subject to federal, state and local payroll withholding taxes. The Settlement Administrator shall issue an IRS form 1099 for payments of interest and penalties. The usual and customary deductions will be taken out of the amounts attributable to unpaid wages. Settlement Class Members should consult with their tax advisors concerning the tax consequences of the payment they receive under the Settlement.

Any and all Employer Taxes that Defendant normally would be responsible for paying will be paid by Defendant in addition to the Settlement Amount.

**D.    What are you giving up to get a payment or stay in the Class?**

Each member of Settlement Class, except those that make a valid and timely request to be excluded from the Class, will release any and all claims and causes of action, known or unknown, contingent or accrued, against Defendant, Defendant's parents, subsidiaries, affiliates, their insurers, attorneys and all agents thereof, arising out of the facts and claims asserted in the Action for wage and hour violations, or any other claims or causes of action that could have reasonably been asserted in the Litigation, based upon the facts alleged including unpaid wages; wage statement violations; separation pay violations; unfair business practices; PAGA; and FLSA, any other applicable provisions of state or

4

# Exhibit A

federal law, including the applicable IWC wage order.

## THE FINAL APPROVAL HEARING

The Court will conduct a final approval hearing regarding the proposed settlement (the "Final Approval Hearing") on _____, 2016, at ADDRESS, in Department ## of the United States District Court for the Eastern District of California. The Court will determine: (i) whether the settlement should be given the Court's final approval as fair, reasonable, adequate and in the best interests of the Settlement Class Members (ii) whether the Settlement Class Members should be bound by the terms of the settlement; (iii) the amount of the attorneys' fees and expense award to Plaintiffs' counsel; and (iv) the amount that should be awarded to the Plaintiff as enhancement payments.

At the Final Approval Hearing, the Court will hear all objections, written or oral, as well as arguments for and against the proposed settlement. You have a right to attend this hearing, <u>but you are not required to do so</u>. You also have the right to hire an attorney to represent you, or to enter an appearance and represent yourself. The Final Approval Hearing may be continued without further notice to the Class. You may contact Plaintiffs' counsel, listed in this Notice, to inquire into the date and time of the final approval hearing.

<u>Condition of Settlement</u>. This Settlement is conditioned upon the Court entering an order at or following the Final Approval Hearing approving the Settlement as fair, reasonable, adequate and in the best interests of the Settlement Class.

## WHAT ARE YOUR OPTIONS?

- **OPTION 1 – *GET A PAYMENT***

California Class members who are employed by Defendant as of [date on which Preliminary Approval], as well as Plaintiff, are not required to file claims to be eligible to receive a payment if you you do not exclude yourself from the settlement.

All California Class members who are no longer employed by Defendant as of [date on which Preliminary Approval], as well as all FLSA Class members must complete and return a valid claim form in order to participate in the settlement.

The estimated amount of your Settlement Payment, including how your estimated amount of the Settlement Payment will be calculated based on eligible workweeks, is set forth above.

If you believe that the number of weeks stated is correct, you do not have to do anything. If you believe the number of weeks is incorrect, you may dispute the amount of workweeks used to calculate your settlement share by timely sending a written notice to the Settlement Administrator informing the Settlement Administrator of the nature of the dispute and providing any records or documentation supporting the Settlement Class member's position.

The Settlement Payment you will receive will be a full and final settlement of your released claims described above.

- **OPTION 2 – *EXCLUDE YOURSELF FROM THE SETTLEMENT***

FPDOCS 31485032.1

Exhibit A

You have a right to exclude yourself ("opt out") from the Settlement Class, but if you choose to do so, you will <u>not receive any benefits from the proposed settlement</u>.  You will **not** be bound by a judgment in this case and you will have the right to file your own lawsuit against Defendants, subject to time limits called Statute of Limitations and other potential defenses that Defendant may assert, and to pursue your own claims in a separate suit.

You can opt out of the Settlement Class by sending a letter by first class U.S. mail to the Settlement Administrator which must: (1) state your name, address, telephone number, and the last four digits of your Social Security number, (2) state the case name as follows: *Godwin v. Winn Management Group LLC;* (3) state that you request exclusion from or "opt out" of the Settlement, (4) be dated, and (5) be signed by you or your legal representative.  To be valid, your request for exclusion must be postmarked no later than _____ [45 days after mailing].

- **OPTION 3 – *OBJECT TO THE SETTLEMENT***

If you wish to remain a Settlement Class Member, but you object to the proposed settlement (or any of its terms) and wish the Court to consider your objection at the Final Approval Hearing, you may object to the proposed settlement.  A class member making an objection may appear at the Final Approval Hearing with or without filing or serving any written objection.  The Settlement Class member may appear personally or through an attorney, at his or her own expense, at the Final Approval hearing to present his or her objection directly to the Court.  Any attorney who will represent an individual objecting to this Resolution must file a notice of appearance with the Judge and serve Class Counsel and Defense Counsel no later than forty-five (45) days after the Notice of Proposed Class Action Resolution was initially mailed to the Settlement Class members.  If a Settlement Class member objects to the Settlement, the Settlement Class member will remain a member of the Settlement Class and if the Court approves this Agreement, the Settlement Class member will be bound by the terms of the Settlement and Final Approval in the same way and to the same extent as a Settlement Class member who does not object.  Any Settlement Class member who submits a written objection and/or makes an oral objection may also participate in the settlement.

Any objection must be mailed to the Settlement Administrator, CPT Group at _____ (Address) and must be postmarked no later than 45 days from the date this notice was initially mailed to you.

PLAINTIFF'S/CLASS COUNSEL:
Michael Malk, Esq.
MICHAEL MALK, ESQ., APC
1180 South Beverly Drive, Suite 302
Los Angeles, California 90035
Telephone: (310) 203-0016

COUNSEL FOR DEFENDANT:
Mark J. Jacobs, Esq. and Shaun J. Voigt, Esq.
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424

**Change of Address**

If you move after receiving this Notice, if it was misaddressed or if for any reason you want your Settlement Award or future correspondence concerning this Action to be sent to a different address, you must supply your preferred address to the Settlement Administrator as soon possible.

## ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

The above is a summary of the basic terms of the settlement.  For the precise terms and conditions of the settlement, you may review the detailed "Stipulation of Resolution" which is available

6

Exhibit A

for viewing online along with other court records regarding this case, on the Court's website. The pleadings and other records in the lawsuit may also be examined in person at any time during regular business hours at the Office of the Clerk located at _____ (Address).

**ALL INQUIRIES REGARDING THIS LITIGATION SHOULD BE MADE TO THE GOODWIN V. WINN MANAGEMENT GROUP SETTLEMENT ADMINISTRATOR,** CPT Group, _____ (Address), _____ (telephone). Please refer to the Goodwin v. Winn Management Group Class Action Settlement.

**PLEASE DO NOT TELEPHONE THE COURT OR THE OFFICE OF THE CLERK FOR INFORMATION REGARDING THIS SETTLEMENT OR THE CLAIM PROCESS**

7

Exhibit A

# CLAIM FORM
*Adam Goodwin v. Winn Management Group*
United States District Court, Eastern District of California
Case No. 1:15-cv-00606-GSA

**<u>IF YOU WANT TO RECEIVE MONEY UNDER THIS SETTLEMENT, YOU MUST COMPLETE AND SIGN THIS FORM AND SUBMIT IT BY [_____].</u>**

**Based on the settlement formula, the Parties estimate that the gross amount you will receive if you timely and properly submit this Claim Form is approximately $_____.**
Note:  The amount you receive could be higher than this estimate.

**1.      CURRENT IDENTIFICATION           CORRECTED INFORMATION***

Name:_____          _____

Address:_____          _____

City, State, Zip:_____          _____

Telephone:_____          _____

Last 4 Digits of Social Security No.:_____          _____

**<u>*If any of the information on the above left column is inaccurate, please provide the corrected information in the space provided in the right column</u>.**

**2.      EMPLOYMENT INFORMATION**

According to the employment records of Defendant Winn Management Group LLC ("Defendant") you were employed for a total of **[INSERT NO. OF WORKWEEKS]** workweeks during the time period between [April 16, 2011 or April 16, 2012] to [date of preliminary approval].

If the information in this section is accurate and you want to receive money under the settlement, you should sign and promptly return this Claim Form.  If you disagree with the information in this Section 2 and think you worked more weeks, please check the appropriate box in Section 4 and mail your disagreement and any supporting paperwork to the Class Action Administrator at the address listed below.

**3.      ACCURACY OF THE INFORMATION LISTED IN SECTION 2:**

If the number of workweeks listed in Section 2 is correct, you may skip this Section.  If you believe that the number of workweeks listed in Section 2 is <u>not</u> correct, then check the box immediately below.

☐      I think I worked more weeks between [April 16, 2011 or April 16, 2012] and [date of preliminary approval].  I have included with my signed Claim Form what I believe is the correct number of work weeks that I worked for Defendant during this period and any papers which show the number of weeks I worked.  I understand that my claim will not be reviewed without this additional information. I understand that the Settlement Administrator will review and make a determination based on Defendant's records and the records/statement I submitted.  I understand that this determination may increase or decrease the amount of my settlement share.  I understand that such determinations are final and binding, with no opportunity for further appeal.

*YOU MUST COMPLETE ALL PAGES OF THIS GENERAL SETTLEMENT CLASS CLAIM FORM*

FPDOCS 31864918.1

# Exhibit B

**4.    PLEASE SIGN BELOW:**

Date: _____          _____
                                                Signature of Claimant

                                                _____
                                                Print

If you have any questions about completing this Claim Form please call the Settlement Administrator at [phone number].

Reminder check list:
1.    Sign and date directly above.
2.    Keep a copy for your records.
3.    Send completed Claim Form via U.S. Mail, postmarked no later than <u>[INSERT DATE]</u>, to:

**Class Action Administrator**

| |
|---|
| **CPT GROUP**<br>**GOODWIN V. WINN MANAGEMENT GROUP**<br>**CLASS ACTION ADMINISTRATOR**<br>**[ADDRESS]**<br>**[TELEPHONE NUMBER]**<br>**[FAX NUMBER]** |

Exhibit B