1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9          FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   ADAM GOODWIN,                    No. 1:15-cv-00606-DAD-EPG
12          Plaintiff,

13   v.                              ORDER GRANTING PLAINTIFF'S MOTION
                                     FOR PRELIMINARY APPROVAL OF
14   WINN MANAGEMENT GROUP LLC,       CLASS ACTION SETTLEMENT

15          Defendant.               (Doc. Nos. 28, 32)

16

17          This matter came before the court on December 6, 2016, for hearing on plaintiff's motion

18   for preliminary approval of a class action settlement, preliminary certification of the proposed

19   class under Rule 23, and conditional certification of the proposed class under the Fair Labor

20   Standards Act ("FLSA").  (Doc. No. 28.)  Attorney Michael Malk appeared on behalf of plaintiff

21   Adam Goodwin, and attorneys Mark Jacobs and Shaun Voigt appeared on behalf of defendant

22   Winn Management Group LLC.  Following the hearing, the court directed the plaintiff to submit

23   supplemental briefing on the pending motion.  (Doc. No. 30.)  The plaintiff submitted a

24   supplemental memorandum in support of the motion for preliminary approval on January 6, 2017,

25   and the matter was thereafter taken under submission.  (Doc. No. 32.)  For the reasons set forth

26   below, the court will grant the plaintiff's unopposed motion for preliminary approval of class

27   action settlement.

28   /////

1

**FACTUAL BACKGROUND**

On April 17, 2015, plaintiff filed the original class action complaint against defendant Winn Management Group LLC ("Winn").  (Doc. No. 1.)  This action now proceeds on plaintiff's First Amended Complaint ("FAC"), filed on May 20, 2015.  (Doc. No. 4.)  In the FAC, plaintiff alleges the following causes of action:  (i) failure to pay overtime under 29 U.S.C. § 201, et seq, and California Labor Code §§ 510, 1194; (ii) failure to issue accurate itemized wage statements under Labor Code §§ 226, 226.3; (iii) failure to pay wages due upon separation of employment under Labor Code §§ 201–203; (iv) unfair business practices under California Business & Professions Code § 17200; and (v) a claim for penalties under the California Labor Code Private Attorneys General Act of 2004 ("PAGA").  (*Id.*)

On August 16, 2016, the parties attended mediation with mediator Robert J. Kaplan. (Doc. No. 28 at 11–12.)  Plaintiff filed a notice of settlement on August 24, 2016.  (Doc. No. 24.)

In the settlement agreement, plaintiff defines the following two classes: (i) "[a]ll non-exempt employees who worked for Defendant in California and both i) received non-discretionary compensation and ii) worked over 8 hours in a day or 40 hours in a week in at least one pay period between April 16, 2011 through [date of preliminary approval]" ("California Class"); and (ii) "all non-exempt employees who worked for Defendant in the United States and both i) received non-discretionary compensation and ii) worked over 40 hours in a week in at least one pay period between April 16, 2012 and [date of preliminary approval]" ("FLSA Class"). (Doc. Nos. 28-2 at 20; 32-1 at 1.)[1]  Plaintiff estimates that there are 1,259 employees belonging to

---

[1]  In their original motion requesting preliminary approval of the class action settlement, the plaintiff sought preliminary certification of a collective action under the FLSA based on a class of employees who worked for defendant outside of California.  (Doc. No. 28.)  However, plaintiff Adam Goodwin, the sole plaintiff in this case, indicated through pleadings and declarations that he worked only in defendant's properties in Fresno, California, from September 2011 to October 2014.  (Doc. No. 28-1 at 2, ¶ 2.)  Following the December 6, 2016 hearing on the pending motion, the court directed the parties to file supplemental briefing clarifying this class definition issue. (*Id.*)  On January 6, 2017, plaintiff submitted a supplemental memorandum that included the following: (i) an addendum to the proposed settlement agreement, which amended the definition of the proposed FLSA class to include both California and non-California employees; and (ii) amended class notice forms.  (Doc. No. 32.)  On February 9, 2017, plaintiff also filed a notice of his consent to represent the proposed FLSA class.  (Doc. No. 33.)

1    the putative classes.  (Doc. No. 28 at 14.)

2           Under the settlement agreement, defendant will make a gross payment of $250,000.  (*Id.*

3    at 12.)  The agreement provides the following allocation of that gross payment: (i) attorneys' fees

4    in the amount of $75,000, to be paid to class counsel;[2] (ii) litigation costs and expenses of up to

5    $15,000 to be paid to class counsel; (iii) $3,750 to be paid to the California Labor & Workforce

6    Development Agency ("LDWA"); (iv) class representative fees of $7,500 to be paid to plaintiff in

7    addition to plaintiff's entitlement as a class member; (v) the remaining funds ("net settlement

8    amount") to be paid to class members.  (*Id.*)  The settlement is non-reversionary, and unclaimed

9    amounts from the proposed settlement amount will be re-allocated to the California and FLSA

10   Class Members participating in the settlement.  (Doc. No. 28 at 12.)

11          On November 16, 2016, plaintiff filed the instant unopposed motion for preliminary

12   approval of the settlement.  (Doc. No. 28.)  Plaintiff seeks an order:  (i) preliminarily certifying

13   the settlement classes under Federal Civil Procedure Rule 23 and the FLSA, with appointment of

14   plaintiff as class representative, and appointment of Michael Malk, Esq., APC as class counsel;

15   (ii) preliminarily approving the settlement agreement; (iii) approving the proposed form and

16   method of service; and (iv) scheduling the hearing date for final approval of the class settlement.

17   (*Id.* at 7–8.)

18                                    **LEGAL STANDARDS**

19   **A.      Class Action Certification and Settlement under Rule 23**

20          "Courts have long recognized that settlement class actions present unique due process

21   concerns for absent class members."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

22   946 (9th Cir. 2011) (citation and internal quotations omitted).  To protect the rights of absent

23

24   ───────────────────────
     [2]  In the initial motion for preliminary approval of class action settlement, plaintiff sought
25   attorneys' fees in the amount of $83,333.33 – which would have constituted 33.33% of the
     proposed settlement amount.  (Doc. No. 28 at 23.)  However, in his supplemental memorandum,
26   plaintiff has reduced the attorneys' fee request to $75,000 – representing 30% of the proposed
     settlement amount, in response to reservations about the amount sought expressed by the court
27   during the December 6, 2016 hearing.  (Doc. No. 32 at 4.)  Plaintiff's supplemental filing also
     provided amended notice forms that account for this requested reduction in the attorneys' fees
28   amount being sought.  (*Id.*)

1  class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve

2  all class action settlements "only after a hearing and on finding that it is fair, reasonable, and

3  adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946.  However, it has been recognized

4  when parties seek approval of a settlement agreement negotiated prior to formal class

5  certification, "there is an even greater potential for a breach of fiduciary duty owed the class

6  during settlement." *Bluetooth*, 654 F.3d at 946.  Thus, the court must review such agreements

7  with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is

8  normally required under the Federal Rules.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

9  Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

10  When parties seek class certification only for purposes of settlement, Rule 23 "demand[s]

11  undiluted, even heightened, attention" to the certification requirements.  *Amchem Prods., Inc. v.*

12  *Windsor*, 521 U.S. 591, 620 (1997).  The district court must examine the propriety of certification

13  under Rule 23 both at this preliminary stage and at a later fairness hearing.  *See, e.g.*, *Ogbuehi v.*

14  *Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*, No. 04-cv-

15  0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

16  Review of a proposed class action settlement ordinarily involves two hearings.  *See*

17  Manual for Complex Litigation (4th) § 21.632.  First, the court conducts a preliminary fairness

18  evaluation and, if applicable, considers class certification.  If the court makes a preliminary

19  determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties

20  are directed to prepare the notice of certification and proposed settlement to the class members.

21  *Id.* (noting that if the parties move for both class certification and preliminary approval, the

22  certification hearing and preliminary fairness evaluation can usually be combined).  Second, the

23  court holds a final fairness hearing to determine whether to approve the settlement.  *Id.*; *see also*

24  *Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

25  Here, the parties move for preliminary approval of a class settlement and preliminary class

26  certification.  Though Rule 23 does not explicitly provide for such a procedure, federal courts

27  generally find preliminary approval of settlement and notice to the proposed class appropriate if

28  the proposed settlement "appears to be the product of serious, informed, non-collusive

4

negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-00636, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); Newberg on Class Actions § 13:13 (5th ed. 2011); *see also Dearauju v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class].").

## B.      Conditional Certification and Settlement under the FLSA

Plaintiff also moves for conditional certification of his collective action under the FLSA.

Pursuant to the FLSA, an employee may file a civil action against an employer that fails to adhere to federal minimum wage and overtime law.  29 U.S.C. § 216(b).  Additionally, "an employee may bring a FLSA collective action on behalf of himself/herself and other employees who are 'similarly situated.'"  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015).  Unlike a Rule 23 class action, non–party employees can join an FLSA class action only if they opt–in by "fil[ing] written consents to join the action."  *Id.* (citing 29 U.S.C. § 216(b) and *Valladon v. City of Oakland*, No. C 06–07478, 2009 WL 2591346, at *7 (N.D. Cal. Aug. 21, 2009)).  The decision to certify an FLSA collective action is within the discretion of the district court.  *See Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006).

"Neither the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined the term 'similarly situated.'"  *Id.* (citing *Kellgren v. Petco Animal Supplies, Inc.*, No. 13CV644, 2015 WL 5167144, at *2 (S.D. Cal. Sept. 3, 2015) and *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 426–27 (N.D. Cal. 2010)).  "Courts have taken at least three different approaches to analyzing the issue:  (1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre–1966 version of Rule 23 for 'spurious' class actions."  *Singleton v. Adick*, No. CV 09–486–PHX–JAT, 2009 WL 3710717, at *4 (D. Ariz. Nov. 2, 2009) (internal quotations omitted).  However, the majority of courts in the Ninth Circuit use a two–tiered approach in determining if

1   plaintiffs are similarly situated.  *Lewis v. Wells Fargo Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal.

2   2009) (citing *Wynn v. National Broadcasting Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)).

3         Under this two-tiered approach, the court first makes a determination as to whether the

4   collective action should be conditionally certified.  *Singleton*, 2009 WL 3710717, at *4.  "At this

5   initial stage, plaintiffs can satisfy their burden to show that they are "similarly situated" by

6   making substantial allegations, supported by declarations or discovery, that "the putative class

7   members were together the victims of a single decision, policy, or plan."  *Litty v. Merrill Lynch &*

8   *Co., Inc.*, No. CV 14–0425 PA (PJWx), 2015 WL 4698475, at *6 (C.D. Cal. April 27, 2015); *see*

9   *also Lewis*, 669 F. Supp. 2d at 1127.  This decision is made under a lenient standard and typically

10  results in conditional certification.  *See Syed v. M–I, L.L.C.*, No. 1:12–CV–1718, 2014 WL

11  6685966, at *2 (E.D. Cal. Nov. 26, 2014); *see also Brewer v. Gen. Nutrition Corp.*, No. 11–cv–

12  03587 YGR, 2013 WL 100195, at *2 (N.D. Cal. Jan. 7, 2013) ("The requisite showing of

13  similarity of claims under the FLSA is considerably less stringent than the requisite showing

14  under Rule 23 of the Federal Rules of Civil Procedure").  The court then re-evaluates its

15  certification decision once discovery is complete, usually upon motion from the party opposing

16  certification.  At this second stage, courts apply a stricter standard for similarly situated

17  employees, and may decertify the class if it finds that the plaintiffs are not similarly situated.  *See*

18  *Wood v. Trivita, Inc.*, No. CV–08–0765–PHX–SRB, 2009 WL 2046048 at *2 (D. Ariz. Jan. 22,

19  2009).

20        Settlement of collective action claims under the FLSA also requires court approval.  *See*

21  *Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014).

22  "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that

23  cannot be modified by contract."  *Genesis Healthcare Corp. v. Symczyk*, ___ U.S. ___, ___, 133

24  S. Ct. 1523, 1527 (2013).  Because an employee's claims under the FLSA are nonwaivable, they

25  may not be settled without supervision of either the Secretary of Labor or a district court.  *See*

26  *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's*

27  *Restaurant*, No. 05–cv–0279 PVT, 2007 WL 2298046, at *1, n.1 (N.D. Cal. Aug. 8, 2007).

28  /////

In reviewing an FLSA settlement, the district court "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Yue Zhou*, 2007 WL 2298046, at *1; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Memorial Healthcare District*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016). In making this determination, courts in the Ninth Circuit often look to the factors used in assessing preliminary certification of class actions under Rule 23. *See Jones*, 2014 WL 108420, at *2 (citing *In re Bank of Am. Wage and Hour Emp't Litig.*, No. 10–MD–2138–JWL, 2013 WL 6670602, *2 (D. Kan. Dec. 18, 2013)) ("Although judicial review of a proposed FLSA settlement is not subject to the same requirements as a class action under Rule 23, some courts have applied Rule 23's procedural framework by analogy as a matter of sound judicial administration."). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute [,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynne's Food Stores*, 679 F.2d at 1355.

## ANALYSIS

### A.     Preliminary Certification of Class related to California Law Violations

Plaintiff seeks preliminary certification of the proposed California Class under Federal Civil Procedure Rule 23(c)(1). Under that rule, courts must determine by order whether an action should be maintained as a class action "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1). Though the parties in this case have stipulated that a settlement class exists, the court must independently consider whether the proposed class meets the requirements of Rule 23 both at this stage and at the later fairness hearing.[3] *See Pointer v. Bank of Am. Nat'l Assoc.*, No. 2:14-cv-00525-KJM-CKD, 2016 WL

---

[3]  The 2003 Amendments to Federal Civil Procedure Rule 23 eliminated the provision stating that class certification orders "may be conditional," and circuit courts have subsequently reached different conclusions about the continued viability of conditional or preliminary certification of settlement classes under the amended rule. *Compare Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 n.8 (3d Cir. 2006) ("[T]he 2003 amendments to the Rule eliminated so-called "conditional" certifications—formerly available under Rule 23(c)(1)(C)"); *with Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that

696582, at *3 (E.D. Cal. Feb. 22, 2016) (citing *Amchem Prods., Inc.*, 521 U.S. at 622).

Certification requires satisfaction of the pre-requisites of Rule 23(a) and (b).  *Id.*  As noted above, courts analyzing a motion to certify a settlement class must pay "undiluted, even heightened attention" to Rule 23 requirements.  *See Amchem*, 521 U.S. at 620, n.16.  A thorough Rule 23 analysis is especially important where a motion to certify a settlement class is unopposed, because in such circumstances "[t]here is no advocate to critique the proposal on behalf of absent class members."  *Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 1793774, at *1 (N.D. Cal. June 19, 2007); *see also Pointer*, 2016 WL 696582, at *4 ("The problem is greater at this preliminary approval stage, where objectors are unlikely to have already appeared.").

On a motion for preliminary approval, plaintiff bears the burden of persuasion that the proposed class satisfies Rule 23 requirements.  Even at the preliminary stage, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."  Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1).

    1.    <u>Rule 23(a) Requirements</u>

Rule 23(a) establishes four prerequisites for class action litigation:  (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation."  *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  The court will address each requirement below.

        a.    *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446

---

"conditional certification survives the 2003 amendment to Rule 23(c)(1)").  In the absence of Ninth Circuit guidance on the issue, this court will not depart from the procedure commonly employed by district courts in this circuit of certifying settlement classes on a preliminary basis for settlement purposes, and deferring final class certification until after the fairness hearing.  *See Denney*, 443 F.3d at 269 (noting that federal district courts "continue to employ this practice," and that the process of "preliminary" certification is endorsed by the Manual for Complex Litigation and Moore's Federal Practice).  Before granting preliminary certification, the court nonetheless must carry out a searching, rather than a cursory, Rule 23 analysis.  *See Amchem Prods., Inc.*, 521 U.S. at 622 (requiring "undiluted, even heightened attention [to Rule 23 requirements] in the settlement context"); *cf. Pointer*, 2016 WL 696582, at *5 ("[D]espite the Supreme Court's cautions in *Amchem* . . . a cursory approach appears the norm").

U.S. 318, 330 (1980).  Courts have found the requirement satisfied when the class comprises of as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket.  *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982)) (discussing Ninth Circuit thresholds for numerosity); *In re Itel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

Here, plaintiff estimates that there are approximately 1,259 total members of the settlement classes, with 116 in California and 1,143 outside of California.  (Doc. No. 28 at 14.) This showing with respect to numerosity is adequate to meet the requirements of Rule 23(a)(1). *See Murillo*, 266 F.R.D. at 474.

          b.     *Commonality*

Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation.  *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted).  "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'"  *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at \*5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates").  However, the raising of merely any common question does not suffice.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("[a]ny competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Here, plaintiff argues that the proposed collective action involves a number of common legal questions, including:  (i) whether defendant provided adequate overtime payment to employees; (ii) whether defendant provided accurate itemized wage statements; and (iii) whether defendant adequately paid wages due upon separation of employment.  *See Palacios v. Penny Newman Grain*, No. 1:14-cv-01804, 2015 WL 4078135, at *4 (E.D. Cal. July 6, 2015) (presenting a similar showing with respect to commonality).  Because it appears that the same conduct which defendant allegedly engaged in "would form the basis of each of the plaintiff's claims," the court finds that commonality is satisfied.  *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 475 (E.D. Cal. 2010) (citing *Acosta v. Equifax Info. Servs., L.L.C.*, 243 F.R.D. 377, 384 (C.D. Cal. 2007) (internal quotation omitted).

c.    *Typicality*

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Armstrong*, 275 F.3d at 868;  *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).  While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical."  *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, plaintiff has submitted his own declaration as well as the declaration of his counsel Michael Malk, stating that plaintiff was subject to the same policies and practices giving rise to the claims of the class members.  (Doc. Nos. 28-1 at 5, ¶ 30; 28-2 at 15, ¶ 63.)  Plaintiff also states in his declaration that he worked at three of defendant's properties in Fresno, California, from September 2011 to October 2014.  (Doc. No. 28-1 at 2, ¶ 2.)  Based on the evidence presented by plaintiff in support of his unopposed motion, the court concludes that plaintiff's /////

claims are reasonably co-extensive with those of the absent California Class, and that typicality is satisfied here.

d.   *Adequacy of Representation*

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed:  (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

Here, plaintiff has submitted evidence that he has no antagonistic interest to the rest of the class, possesses the same interest and injury as members of the California class, and has been in communication with counsel regarding this action.  (Doc. No. 28 at 16.)  *Amchem*, 521 U.S. at 626 (noting that, to meet the adequacy requirement, "[a] class representative must be part of the class and possess the same interest and injury as the class members").  As such, the court finds that plaintiff Goodwin satisfies the adequacy of representation requirement.

Plaintiff also seeks appointment of his current counsel, Michael Malk, Esq., as class counsel.  (Doc. No. 28 at 7.)  Attorney Michael Malk has prosecuted this action on behalf of plaintiff and the settlement class since the commencement  of the litigation; he has extensive experience litigating class actions; and he has been certified by numerous state and federal courts as adequate class counsel.  (Doc. No. 28-2 at 3–9, ¶¶ 5–40.)  The court thus finds that plaintiff's counsel satisfies the adequacy requirements with respect to the California class.

2.   Rule 23(b)(3) Requirements

The parties here seek certification under Rule 23(b)(3).  (Doc. No. 29-1 at 16.)  Rule 23(b)(3) requires:  (i) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  *See Amchem*, 521 U.S. at 615.  The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a).  *Wolin v.*

1     *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521

2     U.S. at 623–24).  The court will examine each requirement in turn below.

3                   a.     *Predominance*

4        First, the common questions must "predominate" over any individual questions. While

5     this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much

6     higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25;

7     *Hanlon*, 150 F.3d at 1022 (9th Cir. 1998).  While Rule 23(a)(2) can be satisfied by even a single

8     question, Rule 23(b)(3) requires convincing proof the common questions "predominate."

9     *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022.  "When common questions present a

10     significant aspect of the case and they can be resolved for all members of the class in a single

11     adjudication, there is clear justification for handling the dispute on a representative rather than on

12     an individual basis." *Hanlon*, 150 F.3d at 1022.

13        As discussed above, plaintiff's complaint challenges defendant's employment policies

14     related to overtime pay, provision of wage statements, and payment upon separation.  (Doc. No.

15     4.)  In his motion for preliminary approval of the class action settlement, plaintiff argues that the

16     predominance requirement is satisfied because his complaint challenges policies that defendant

17     universally applied to class members.  (Doc. No. 28 at 16–17.)  Class actions in which a

18     defendant's uniform policies are challenged generally satisfy the predominance requirement of

19     Rule 23(b)(3).  *See Palacios*, 2015 WL 4078135, at *5–6; *see also Clesceri*, 2011 WL 320998, at

20     *7.  The court therefore concludes that the predominance requirement has been met in this case.

21                   b.     *Superiority*

22        Rule 23(b)(3) also requires a court to find "a class action is superior to other available

23     methods for the fair adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In resolving the

24     Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing

25     separate actions individually, any litigation already in progress involving the same controversy,

26     the desirability of concentrating in one forum, and potential difficulties in managing the class

27     action—although the last two considerations are not relevant in the settlement context." *See*

28     /////

1   *Palacios*, 2015 WL 4078135, at \*6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL

2   2117001, at \*10 (E.D. Cal. June 11, 2012)).

3       Plaintiff asserts that the superiority requirement is satisfied because: (i) it would be

4   inefficient for each member of the California Class to bring individual actions; (ii) the cost of

5   litigation would far exceed the potential recovery for each individual class member; and (iii)

6   public policy supports the use of a class action to secure enforcement of statutes focusing on the

7   workplace. (Doc. No. 28 at 17.) The court finds plaintiff's arguments persuasive and concludes

8   that the superiority requirement is satisfied here.

9   **B.**     **Conditional Certification of Collective Action under the FLSA**

10       Plaintiff also seeks conditional certification of the proposed FLSA Class. (Doc. No. 32-1

11   at 1.) As discussed above, plaintiffs seeking conditional certification of a collective action under

12   the FLSA have the burden to show that they are "similarly situated" to other employee class

13   members. *See Litty*, 2015 WL 4698475, at \*6; *see also Lewis v. Wells Fargo Co.*, 669 F. Supp.

14   2d 1124, 1127 (N.D. Cal. 2009).[4] Courts apply a lenient standard when determining whether to

15   conditionally certify a class under the FLSA. *See Syed*, 2014 WL 6685966, at \*2. Here, plaintiff

16   alleges that the proposed class was subject to defendant's uniform employment policies, which

17   resulted in class members being denied of overtime pay, accurate and itemized wage statements,

18   and wages due upon separation of employment. (Doc. No. 28 at 15.) The court finds that these

19   allegations are sufficient to support conditional certification of plaintiff's FLSA Class.

20   **C.**     **Preliminary Fairness Determination**

21       Plaintiff also seeks approval of their proposed settlement. (Doc. No. 28 at 17.) Under

22   Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable,

23   and adequate. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a

24   procedural and substantive component." *See, e.g.*, *In re Tableware Antitrust Litigation*, 484 F.

25   

26   [4] Here, plaintiff alleges he was subject to the same employee policies as other FLSA class members and the court finds that unchallenged factual allegation sufficient for purposes of

27   conditional certification. *See Deatrick v. Securitas Security Servs. USA, Inc*., No. 13-cv-05016-JST, 2016 WL 1394275, at \*3 (N.D. Cal. Apr. 7, 2016) (granting preliminary approval where a

28   single California employee represented a nationwide FLSA class).

Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).  In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if:  (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class.  *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).  However, a district court reviewing a proposed settlement is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute."  *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

### 1.   Procedural Adequacy

The first factor relevant to the court's preliminary approval of settlement addresses the means by which the parties reached the proposed settlement.  *See Pierce v. Rosetta Stone, Ltd.*, No. C 11–01283 SBA, 2013 WL 1878918, at *4 (N.D. Cal. 2013).  Here, the settlement resulted from non-collusive negotiation, following a full day of mediation with mediator Robert Kaplan. (Doc. No. 28-2 at 12, ¶ 51.)  *See Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").  The parties agreed to settlement after conducting both formal and informal discovery, where they exchanged information concerning bonuses, commissions, and incentive compensation provided to employees during the stated class period, as well as information about regular and overtime hours worked by employees during that time period.  (Doc. No. 28-2 at 9, 11, ¶¶ 42, 47.)  Based on the facts represented by the plaintiff, the court concludes that the settlement was the product of informed, arm's length negotiations by the parties.  *See Palacios*, 2015 WL 4078135, at *8 (noting "the [c]ourt need not perform a full fairness analysis at this time because it will be done in connection with the [final] fairness hearing.") (quoting *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08-321, 2012 WL 857891, at *5 (S.D.N.Y. Feb. 24, 2012)).

/////

14

2.      Substantive Adequacy

In conducting the preliminary fairness determination, the court must also consider whether the settlement itself is substantively fair, reasonable, and adequate.  *See Bluetooth*, 654 F.3d at 945.  Several factors bear on this inquiry, including the size of the settlement award, the nature of the claims released, the amount of attorneys' fees awarded, and the size of the incentive payment to class representatives.  *See Hanlon*, 150 F.3d at 1026; *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6–7 (N.D. Cal. Nov. 21, 2012).

a.      *Adequacy of the Settlement Amount*

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation."  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d at 459.

Plaintiff argues that the proposed gross settlement amount of $250,000 is adequate given defendant's potential liability in this action.  (Doc. Nos. 28-2 at 8–13; 32 at 2–3.)  Plaintiff calculates the total potential liability by relying on information provided by defendant during discovery regarding bonus and compensation commissions given to employees and hours worked by employees during the stated time period.  (Doc. No. 28-2 at 8–12.)  Based on this information obtained during discovery, plaintiff estimates that the maximum potential recovery for the California Class is $224,136.94.  (Doc. No. 32 at 2–3.)  This total estimated amount includes:  (i) $6,426.97 related to plaintiff's overtime claims,[5] calculated by dividing the bonus rate by two,

/////

/////

_____

[5]  Plaintiff alleges that defendant was obligated to pay employees two kinds of overtime payments—overtime on the regular hourly rate of pay, as well as overtime on the extra monthly bonus payments employees were to receive based on rental increase when a lease was renewed at defendant's properties.  (Doc. No. 28 at 8–9.)  According to plaintiff, defendant paid overtime on regular hourly wages, but failed to pay employees the overtime payments due on bonuses.  (*Id.*)

and multiplying by the total number of overtime hours worked;[6] (ii) $2,341 annualized interest on

the overtime liability amount; (iii) $6,426.97 in liquidated damages related to plaintiff's overtime

claims; (iv) $29,300 related to plaintiff's claim for failure to issue accurate itemized wage

statements, calculated by multiplying the 293 total number of employee pay periods by 100;[7]

(v) $121,042 related to plaintiff's claim for failure to pay final wages, calculated by multiplying

the daily rate of pay by the number of penalty days, times the number of California Class

members who were former employees;[8] (vi) $58,600 in PAGA penalties, calculated by

multiplying the maximum penalty of $200 times 293, the alleged number of instances defendant

failed to pay overtime on the correct regular rate of pay.  (*Id.*)  Plaintiff also estimates that the

total potential recovery for the FLSA Class is $176,387.52, based on the following potential

liability amounts: (i) $75,654.53 related to overtime claims; (ii) $25,078.45 annualized interest on

this amount; and (iii) $75,654.53 liquidated damages.  (Doc. No. 32 at 4.)[9]

Based on this projected amount, plaintiff argues that the $250,000 proposed gross

settlement amount represents approximately 63% of the total potential liability of defendant.

(Doc. No. 28 at 23.)  The settlement entitles participating settlement class members to an average

award of $112.  (*Id.*)  Plaintiff contends that this amount is reasonable in light of the risks and

expenses of further litigation in this action.  (*Id.*)

Based on the information provide by plaintiff in his moving papers and supplemental

filing, the court concludes that the settlement award in this case appears to be fair and reasonable,

and that preliminary approval of this amount is appropriate.

---

[6]  In calculating the overtime payment due on employee bonuses, plaintiff relies on the method of calculation proposed by the Divisions of Labor Standards Enforcement Manual.  (Doc. No. 32 at 2, n.1.)

[7]  *See* Cal. Lab. Code § 226(e)(1).

[8]  Plaintiff estimates that there were twenty seven California Class members who were former employees; that these employees worked an average of nine hours per day at an average hourly rate of $15.73 and an overtime rate of $23.60; and that the number of penalty days is thirty.  (Doc. No. 32 at 3.)

[9]  Defendant's combined potential liability on both the California Class claims and the FLSA claims is therefore $400,524.46.

16

i.     *Attorneys' Fees*

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002); *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *Selk v. Pioneers Memorial Healthcare District*, 159 F. Supp. 3d 1164, 1180 (S.D. Cal. 2016) (analyzing reasonableness of attorneys' fees in the context of an FLSA collective action settlement). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu*, 2016 WL 6211308, at *5. Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.*

17

1   (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

2   Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at

3   1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review

4   of recent reported cases discloses that nearly all common fund awards range around 30% even

5   after thorough application of either the lodestar or twelve-factor method.").  Nonetheless, an

6   explanation is necessary when the district court departs from the twenty-five percent benchmark.

7   *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

8         To assess whether the percentage requested is reasonable, courts may consider a number

9   of factors, including:

10        [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether

11        counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in

12        some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and

13        whether the case was handled on a contingency basis.

14   *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal

15   quotation marks omitted).  The Ninth Circuit has permitted courts to award attorneys' fees using

16   this method "in lieu of the often more time-consuming task of calculating the lodestar."

17   *Bluetooth*, 654 F.3d at 942.

18         Plaintiff brings various state law claims and, under California law, "[t]he primary method

19   for establishing the amount of reasonable attorney fees is the lodestar method."  *In re Vitamin*

20   *Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted).

21   The court determines the lodestar amount by multiplying a reasonable hourly rate by the number

22   of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d

23   1145, 1149 (9th Cir. 2001).  The product of this computation, the "lodestar" amount, yields a

24   presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir.

25   2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  The Ninth Circuit

26   has recommended that district courts apply one method but cross-check the appropriateness of the

27   amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

28   /////

Here, plaintiff seeks attorneys' fees of 30% of the settlement amount, $75,000 in fees.[10] (Doc. No. 32 at 4.)  This fee amount is above the benchmark for this circuit.  *See Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same).  However, the percentage is not unreasonable as an upper bound.  As such, the court approves the attorneys' fee request on a preliminary basis.  *See Vizcaino*, 290 F.3d at 1047 (observing that percentage awards of between twenty and thirty percent are common); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method.").  In connection with the final fairness hearing, the court will cross check the requested amount with the lodestar amount based upon counsels' submission, and will determine whether the award of an above-benchmark percentage in fees is reasonable here.  *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (noting that an explanation is necessary when the district court departs from the twenty-five percent benchmark).

### ii.  *Claim Form's Release*

As part of the settlement, "Defendant is discharged of all claims asserted in the action" in exchange for payment of $250,000.  (Doc. No. 28-2 at 32.)  For those members of the FLSA class, FLSA claims will only be released for those who affirmatively opt in.  (*Id.*)  Altogether, these released claims track plaintiff's claim in this action and the settlement does not release unrelated claims that class members may have against defendant.  *Cf. Bond v. Ferguson Enter., Inc.*, No. 1:09-cv-01662-OWW-MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("This form of release is overbroad by arguably releasing all unrelated claims up to the date of the Agreement.").

### iii.  *Class Representative Payment*

The settlement agreement provides for a class representative payment of $7,500.  At its discretion, a district court may award incentive payments to named plaintiffs in class action cases

---

[10]  *See* n.2.

1   or FLSA collective actions. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir.

2   2009); *see also Selk*, 159 F. Supp. 3d at 1181 (discussing FLSA collective action cases). The

3   purpose of incentive awards is to "compensate class representatives for work done on behalf of

4   the class, to make up for financial or reputational risk undertaking in bringing the action, and,

5   sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563

6   F.3d at 958–59.

7        To justify an incentive award, a class representative must present "evidence demonstrating

8   the quality of plaintiff's representative service," such as "substantial efforts taken as class

9   representative to justify the discrepancy between [his] award and those of the unnamed

10  plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Such incentive awards

11  are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant

12  reputational risk by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958–59.

13       The Ninth Circuit has emphasized, however, that "district courts must be vigilant in

14  scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165

15  (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition,

16  district courts have declined to approve incentive awards that represent an unreasonably high

17  proportion of the overall settlement amount, or that are disproportionate relative to the recovery

18  of other class members. *See Ontiveros*, 303 F.R.D. at 365–66; *see also Ko v. Natura Pet Prods.,*

19  *Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that

20  an incentive award of $20,000, comprising one percent of the approximately $2 million common

21  fund was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer*

22  *Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing

23  the incentive award to $2,000 where the class representatives did not demonstrate great risk to

24  finances or reputation in bringing the class action). These courts have reasoned that

25  overcompensation of class representatives could encourage collusion at the settlement stage of

26  class actions by causing a divergence between the interests of the named plaintiff and the absent

27  class members, destroying the adequacy of class representatives. *See Staton*, 327 F.3d at 977–78;

28  *see also Radcliffe*, 715 F.3d at 1165.

1   Here, the proposed settlement agreement provides an enhancement award of $7,500 to

2   class representative Adam Goodwin, an amount that represents 3% of the total settlement fund.

3   (Doc. No. 28-2 at 28.)  Plaintiff argues that the requested enhancement award is appropriate in

4   light of his efforts during the course of this litigation.  (*Id.* at 22.)  In his declaration, plaintiff's

5   counsel indicates that plaintiff Goodwin engaged in lengthy interviews with counsel during the

6   litigation, reviewed litigation documents, attended the mediation of the action, and considered the

7   terms of the proposed settlement agreement.  (Doc. No. 28-2 at 16, ¶ 65.)

8   The incentive award provided in the settlement agreement is significantly higher than the

9   average recovery amount of individual class members, estimated by plaintiff to be $112.  (Doc.

10   No. 28 at 13.)  However, courts in this circuit have previously approved enhancement awards in

11   this amount, and the court finds that the award is "not outside the realm of what has been

12   approved as reasonable by other courts."  *Aguilar*, 2017 WL 2214936, at *8 (and cases cited

13   therein); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880,

14   at *9 (N.D. Cal. Feb. 17, 2016) (approving an enhancement award of $7,500 to each class

15   representative).  The requested enhancement award is thus approved on a preliminary basis.  At

16   the final approval hearing, the court will review plaintiff's evidence that the requested incentive

17   award is warranted here—i.e., evidence of the specific amount of time plaintiff spent on the

18   litigation, the particular risks and burdens carried by plaintiff as a result of the action, or the

19   particular benefit that plaintiff provided to counsel and the class as a whole throughout the

20   litigation.  *See Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL

21   12125768, at *15 (C.D. Cal. Oct. 16, 2013).

22   **D.**   **Proposed Class Notice and Administration**

23   For proposed settlements under Rule 23, "the court must direct notice in a reasonable

24   manner to all class members who would be bound by the proposal.  Fed. R. Civ. P. 23(e)(1); *see*

25   *also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement

26   under Rule 23(e).").  A class action settlement notice "is satisfactory if it generally describes the

27   terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

28   and to come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th

Cir. 2004) (internal quotations and citations omitted).

Additionally, for proposed settlements under the FLSA, "the court must provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.'" *Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 170 (1989)); *see generally* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Here, plaintiff provides a notice form that describes the terms of the settlement, informs the class of the attorneys' fee amount, provides information concerning the time, place, and date of the final approval hearing, and informs absent class members that they may enter an appearance through counsel.  (Doc. No. 29-3 at 19–21.)  It also notifies absent class members about how they may object to the proposed settlement or opt out, and provides for mail delivery.  (*Id.*)  Finally, the proposed settlement includes a procedure for absent class members to opt-in for the release of FLSA claims.  (Doc. No. 28-2 at 32.)

Plaintiff has also proposed the following implementation schedule:

| Date | Event |
|---|---|
| Within ten days of the Final Effective Date | Deadline for defendant to forward the Maximum Settlement Amount ("MSA") to the Settlement Administrator |
| Upon receipt (but no later than three days later) of the MSA from defendant | Settlement administrator shall deposit the funds into an interest-bearing bank account |
| Within twenty-one days after the court grants preliminary approval | Deadline for defendant to provide settlement class member list containing class members' last-known addresses to the Settlement Administrator |
| Within ten days after the Settlement Administrator receives the class member list | Settlement Administrator shall mail class members' class notice |
| No later than thirty days from date on which the class notice is mailed by the Settlement Administrator | Deadline for settlement class members' objections to the settlement to be filed with the court and served on all counsel of record |

| | |
|---|---|
| No later than thirty days from date on which the class notice is mailed by the Settlement Administrator | Deadline for settlement class members to challenge defendant's employment data |
| No later than thirty days from date on which the class notice is mailed by the Settlement Administrator | Deadline for the settlement class members to submit a claim form or to a request for exclusion form |
| Final Effective Date | (i) if there is an appeal of the court's final approval order and judgment in the action, including any appeal of an award of attorney's fees or incentive payments, the date of final affirmance of the judgment on an appeal, the date of dismissal of such appeal, the expiration of the time for a petition for review of such appeal, and, if review is granted, the date of final affirmance of that judgment following review pursuant to that grant; or (ii) if there is no appeal, then thirty (30) calendar days after entry of the court's final approval order and judgment in the action |
| No later than fifteen days after the Settlement Administrator notifies the parties of the final total number of valid request to be excluded | Deadline for defendant to notify class counsel whether it is exercising its right to void the Settlement Agreement if 5% or more of the settlement class makes a valid request to be excluded |
| At least five days before the final approval hearing | Class counsel and defense counsel shall file any responses to any written objections submitted to the court |
| Within ten days after entry of the final approval order | Settlement Administrator shall provide to the parties a written statement of how the MSA will be allocated |
| Within ten days of the Final Effective Date | Settlement Administrator shall issue a check to each qualifying final settlement class member |
| Within ten days of the Final Effective Date | Settlement Administrator shall distribute class counsel's fees, costs, and the enhancement award |
| Within ten days of the Final Effective Date | Settlement Administrator shall make payment to the LWDA |

November 7, 2017 at 9:30 a.m.                     Hearing on plaintiff's motion for final approval
                                                 of class action settlement and motion for
                                                 attorneys' fees and costs and class
                                                 representatives' enhancement awards

      The court finds that the notice and the manner of notice proposed by plaintiff meets the

requirements of Federal Civil Procedure Rule 23(c)(2)(B) and 29 U.S.C. § 216(b), and that the

proposed mail delivery is also appropriate in these circumstances.

CONCLUSION

      For the reasons stated above, plaintiff's motion for preliminary approval of class action

settlement (Doc. Nos. 28, 32) is granted, and:

1.     Preliminary class certification under Rule 23 is approved;

2.     Conditional certification of the collective action under the FLSA is approved;

3.     Plaintiff's counsel, Michael Malk, is appointed as class counsel;

4.     The named plaintiff, Adam Goodwin, is appointed as class representative;

5.     The proposed notice and claim form conform with Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) and are approved;

6.     CPT Group, Inc. is approved as claims administrator;

7.     The proposed settlement detailed herein is approved on a preliminary basis as fair and adequate;

8.     The hearing for final approval of the proposed settlement is set for November 7, 2017 at 9:30 a.m., with the motion for final approval of class action settlement to be filed twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230;

9.     Plaintiff's proposed settlement implementation schedule is adopted.

IT IS SO ORDERED.

Dated:   **July 26, 2017**

                                      UNITED STATES DISTRICT JUDGE