1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ADAM GOODWIN, individually and on        No. 1:15-cv-00606-DAD-EPG
    behalf of all others similarly situated,
12
                  Plaintiff,
13                                           ORDER GRANTING FINAL APPROVAL OF
          v.                                 CLASS ACTION SETTLEMENT
14
    WINN MANAGEMENT GROUP LLC,               (Doc. No. 37)
15
                  Defendant.
16

17

18          This matter came before the court for hearing on plaintiff's motion for final approval of a

19  class action and Fair Labor Standards Act ("FLSA") settlement, as well as a motion for award of

20  attorneys' fees and an incentive payment for the class representative. (*See* Doc. Nos. 37, 37-2.)

21  A hearing was held on November 7, 2017, with attorney Michael Malk appearing on behalf of

22  plaintiff and the class, and attorney Mark Jacobs appearing on behalf of defendant. Considering

23  all of the evidence supplied in connection with the motion and the representations of counsel at

24  the hearing on this matter, the court will grant final approval of this settlement.

25                              **BACKGROUND**

26          Preliminary certification of this class action was granted on July 26, 2017. (Doc. No. 34.)

27  The claims brought by the plaintiff are set out in that document, and will not be repeated here.

28  Notice was sent by the settlement administrator to the 1,562 class members on September 19,

2017.  (Doc. No. 37-6 at ¶¶ 5–7.)  Only twenty-four class members were unable to receive notice, because the settlement administrator could not locate valid addresses for them.  (*Id.* at ¶¶ 8–9.)  No written objections to the settlement were received and only one class member requested to be excluded.  (*Id.* at ¶¶ 13–14.)

## FINAL CERTIFICATION OF CLASS ACTION UNDER RULE 23

The court has already evaluated the standards for class certification in its prior order granting preliminary approval of the class action settlement here.  (Doc. No. 34 at 7–13.)  Nothing has been raised subsequently that might affect the court's prior analysis of whether class certification is appropriate here, and the court has no cause to revisit that analysis.  The court finds final certification of the following class is appropriate:

> All non-exempt employees who worked for Defendant in California and both i) received non-discretionary compensation and ii) worked over 8 hours in a day or 40 hours in a week in at least one pay period between April 16, 2011 and July 26, 2017.

Attorney Michael Malk is confirmed as class counsel, and plaintiff Adam Goodwin is confirmed as the class representative.

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.").  This requires that:  (1) notice be sent to all class members; (2) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (3) the parties seeking approval file a statement identifying the settlement agreement; and (4) class members be given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  The settlement agreement, as amended by the parties, was previously filed on the court's docket.  (*See* Doc. Nos. 28-2, 32-1.)  Class members have been given an opportunity to object, and none have done so.  The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

/////

/////

## A.     Notice

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery."  *Hanlon*, 150 F.3d at 1025.  It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

Here, the court reviewed the class notice that was proposed when the parties sought preliminary approval of the settlement and found it sufficient.  (Doc. No. 34 at 21–22.)  Notice was sent by the settlement administrator to the 1,562 class members on September 19, 2017. (Doc. No. 37-6 at ¶¶ 5–7.)  Of those notices, 119 were returned to the sender, of which sixteen had a forwarding address on file.  (*Id.* at ¶ 8.)  For the remaining 103 class members, notice was again attempted at new addresses for ninety-six of the class members, ultimately resulting in only twenty-four class members to whom no notice could be delivered.  (*Id.* at ¶ 9.)  Therefore, it appears that approximately 98 percent of the class members received notice of this settlement.

Of the class members receiving notice of the settlement, the settlement administrator reports that no written objections were filed and only one request for exclusion was received.  (*Id.* at ¶¶ 13–14.)  Moreover, no class members or their representatives appeared at the final fairness hearing to object to the settlement.

/////

This settlement requires some class members to submit a claim in order to receive any proceeds from the settlement. The settlement administrator reports it has received forty-two invalid claims responses: forty from class members who were not required to file claims and two duplicates. (*Id.* at ¶ 10.) Further, one class member has filed a deficient claim form. (*Id.* at ¶ 11.) All told, the settlement will be paid out to 306 claimants—which includes those members of the California class and FLSA members in California who were employed by defendant as of July 26, 2017 and were not required to file claims—representing 54.93% of the total amount that could be claimed by class members from the settlement.[1] (*Id.* at ¶ 15.)

Given the above, the court concludes adequate notice was provided to the vast majority of the class here. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting the court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The court accepts the reports of the settlement administrator, and finds sufficient notice has been provided so as to satisfy Federal Rule of Civil Procedure 23(e)(1).

### B. Final Fairness Hearing

The court held a final fairness hearing in this action on November 7, 2017. Both class counsel and defense counsel were present. No class members, objectors, or counsel representing the same appeared at the hearing. The court now determines that the settlement is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

In assessing whether a district court's determination of the fairness of a class action settlement was within its discretion, the Ninth Circuit Court of Appeals balances the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

---

[1] Of some concern, the court observes that only approximately 20 percent of the total number of class members will receive any compensation from this settlement. Nonetheless, this concern is insufficient to warrant rejection of the settlement.

> maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). This court's analysis is guided by those factors. These settlement factors are non-exclusive, and not each need be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7. While the Ninth Circuit has observed that "strong judicial policy . . . . favors settlements," *id.* at 576 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), where the parties reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members," because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotations and citations omitted).

In particular, where a class action settlement agreement was reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *In re Bluetooth*, 654 F.3d at 946–47. District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These more subtle signs include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.*

5

(internal citations and quotations omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to a certain amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluetooth*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). Thus, while the court should examine any relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle signs of collusion identified above may also constitute error. *Id.* at 1224–25.

### 1. Strength of the Plaintiff's Case

Plaintiff explains in his brief in support of the motion for final approval that the class faced risks at the class certification stage due to two factors: (1) "the issue of whether Winn's bonuses and commissions were discretionary and therefore would not need to be included in the regular rate of pay for purposes of overtime"; and (2) the fact that defendant advised plaintiff that it had settled another class action previously which incorporated certain of the same class members, such that only about seven months of the class period remained relevant. (Doc. No. 37 at 17.)

Under the FLSA and California labor laws, bonuses generally need not be included in the standard rate of pay from which overtime is calculated if "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise." 29 U.S.C. § 207(e)(3); *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1129–30 (C.D. Cal. 2011).

Plaintiff's allegation that the bonuses are non-discretionary was therefore key to resolving the merits of this action in his favor, and was an important factual allegation of the complaint. (*See* Doc. No. 4 at ¶¶ 3–4, 6, 15, 20.) According to class counsel, there was "perhaps a 50% chance" that the class "would not prevail on the merits of some or all of their claims." (Doc. No. 37-4 at ¶ 62.) Both counsel confirmed at the hearing on the pending motion that defendant had a good faith argument regarding the discretionary nature of the bonuses.[2] Since demonstrating the bonuses were not discretionary was a necessary component of plaintiff's case, resolution of this issue against plaintiff would have resulted in the class recovering nothing. Therefore, while plaintiff believes his claims had merit, it was not certain that he would ultimately prevail in this matter on behalf of the class.

### 2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

As indicated above, plaintiff has indicated he believes there was substantial risk the class would not be awarded significant damages because of the possibility that defendant might successfully claim the bonuses were discretionary. This case has not yet proceeded to the class certification stage, and therefore substantial expense would be incurred in litigating a class certification motion, propounding and responding to merits-phase discovery, disputing any dispositive motions, and ultimately trying the case. It is not only possible but likely that further litigating this case to a final resolution would have required significant investments of both time and expenses, absent a settlement.

### 3.    Risk of Maintaining Class Action Status Throughout Trial

It is unclear whether there are any risks associated with maintaining class action status throughout a trial in this matter. No information is currently before the court suggesting that individuals in this matter are governed by different policies. Therefore, the court concludes there was little risk in maintaining the suit's status as a class action until its resolution.

---

[2]  Defense counsel also indicated that the settlement referenced by plaintiff was pending final approval in Fresno County Superior Court at the time of the hearing on the pending motion for final approval. Since the pending settlement was not yet finalized and its impact on the class's potential recovery in this action is therefore uncertain, the court will not consider this as a factor in determining the strength of plaintiff's case.

**4.** <u>Amount Offered in Settlement</u>

The amount offered in settlement in this case is $250,000. Plaintiff's counsel estimates that the realistic total recovery here for both the California Class and the FLSA Class would be $400,524.46,[3] and therefore a settlement of $250,000 reflects a recovery of more than half of what the class could reasonably expect to recover. (Doc. No. 37-4 at ¶ 54.) Plaintiff's counsel explains that, prior to the settlement mediation, he calculated a 100 percent violation rate for all claims asserted in the FAC, assuming that class members always received bonuses and always worked overtime. (*Id.* at ¶ 53.) He then made "substantial 'deductions'" during mediation, for four reasons: (1) defendant argued "that Plaintiff faced some risk that the Court may not certify the class because according to defendant, bonuses were discretionary and therefore, Defendant properly paid its employees overtime at the regular rate of pay"; (2) defendant advised plaintiff's counsel "a later-filed class action settled two weeks prior to mediation, and that action included §§226, 203 and PAGA penalties," and therefore those "penalties were . . . not recoverable in this Action"; (3) further, "the California overtime claim was settled in the later-filed class action, with the exception of about 7 months of the Class Period in this Action . . . [and therefore] many of the very same claims regarding these very same class members were already settled"; and (4) defendant "corrected certain assumptions" plaintiff's counsel had engaged in, namely by pointing out that there were only 293 instances in which the underlying labor law violation could have occurred. (*Id.*) Overall, the court concludes the amount offered in settlement is not unreasonable in this case, since there were apparently not an unduly large number of instances in which the alleged labor law violation could have occurred.

/////

/////

---

[3] Plaintiff's counsel explains that he calculated defendant's maximum possible exposure, and that under his damages model, the entire California Class could only have recovered $6,426.97 in lost wages, but could have recovered a further $217,709.97 in liquidated damages, interest, and penalties for a total of $224,136.94. (Doc. No. 37-4 at ¶ 49.) The FLSA Class, according to plaintiff's counsel, could have recovered lost wages of $75,654.53, and $100,732.99 in liquidated damages, interest, and penalties, for a total of $176,387.52. (*Id.* at ¶ 50.) Therefore, the total estimated maximum recovery would have been $400,524.46.

## 5. Extent of Discovery Completed and the Stage of the Proceeding

Consideration of this factor weighs slightly against finding the settlement fair in this case. The parties engaged in little to no formal discovery here. According to plaintiff's counsel, both parties propounded written discovery, and then the parties "agreed to engage in informal discovery and explore the possibility of the cost effective alternative of settlement." (Doc. No. 37-4 at ¶ 47.) Plaintiff's counsel thereafter reviewed this informal discovery "and various documents produced by Defendant," which included information defendant produced about the size of the class both inside and outside of California, the number of properties operated by defendant, defendant's overtime policies, and "the number of bonuses paid-out in pay periods where Class members worked overtime during the Settlement Class Period." (*Id.* at ¶ 47.) It appears the parties sought to settle this case from the outset and did not engage in any substantive discovery or motion practice. Aside from simply weighing against the fairness of the settlement, the dearth of discovery completed in this case also suggests class counsel's views regarding the adequacy of the settlement should be accorded somewhat less credence than would be the case had significant discovery been undertaken.

## 6. Experience and Views of Counsel

Plaintiff's counsel declares that he received his B.A. from the University of California at Santa Barbara in 1998 and his J.D. from the University of California at Davis in 2002. (Doc. No. 37-4 at ¶ 4.) He became a member of the California State Bar in 2002, and worked for two different law firms until August 2007, when he started his own practice concentrating on wage and hour class actions. (*Id.* at ¶¶ 5–7.) Plaintiff's counsel indicates he has been approved as solo or co-class counsel in thirty-four different class actions, twenty-seven of which were class settlements. (*Id.* at ¶¶ 8–41.) Class counsel believes the settlement is fair and adequate, in light of the risk that he believes the class had only a 50 percent chance of prevailing on the claims. (*Id.* at ¶¶ 61–67.) As noted, this opinion weighs only slightly in favor of finding the settlement reasonable, given the limited discovery undertaken by the parties.

/////

/////

### 7. Presence of a Government Participant

Pursuant to 28 U.S.C. § 1715(b), defendants are required to serve any proposed settlements in class actions on certain state and federal officials within ten days of settlement. *See also Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1075 (9th Cir. 2017). The court may not give final approval to any proposed settlement until at least 90 days have passed since all of the necessary officials were served. 28 U.S.C. § 1715(d). Defendant filed its notice on the court's docket on November 21, 2017, indicating that the required notice was served on November 15, 2017. The requisite 90 days have now passed, and no governmental agency has sought to intervene. This weighs in favor of the settlement.

### 8. Reaction of the Class Members to the Proposed Settlement

As mentioned previously, no class members have objected to the settlement, and only one class member has opted out of being included in it. The lack of objections or large numbers of class members opting out of the settlement suggests general approval of the settlement by the class.

### 9. Subtle Signs of Collusion

The court now turns to a review of whether any of the "more subtle signs" of collusion noted by the Ninth Circuit are present here. *See In re Bluetooth*, 654 F.3d at 947. The award of attorneys' fees sought here—thirty percent of the settlement fund—is on the high end of amounts typically awarded in the Ninth Circuit. *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704, 2011 WL 5511767 AWI JLT, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). That said, both the fee award and settlement amount are relatively small, and plaintiff's counsel voluntarily reduced the amount of fees sought in this case. Therefore, the amount of attorneys' fees sought here is not indicative of collusion between class counsel and defendant.

This settlement does, however, contain a "clear-sailing" provision. (*See* Doc. No. 28-2 at 28) (noting "Defendant has agreed not to oppose" class counsel's requests to be awarded up to one-third of the settlement in attorneys' fees and $15,000 in litigation expenses). While these

fees will be paid out of the common fund and are not being paid by defendant itself, the court still notes defendant's acquiescence to class counsel's fee request as weighing slightly against the approval of the settlement.

There is no reversionary clause in this agreement, thereby obviating any concern that funds will be returned to defendant here. (Doc. No. 28-2 at 13; *see also id.* at 28–31.)

In sum, the more subtle signs of collusion that the Ninth Circuit has warned of are simply not sufficiently present here to warrant the court rejecting the proposed settlement. While the attorneys' fees sought are somewhat high compared to the Ninth Circuit's benchmark, it is not surprising for attorneys to seek a higher amount of fees than they may ultimately be awarded. Moreover, because the attorneys' fee award will be paid from the common fund and not separately by defendant, the circumstances of the case do not suggest defendant is attempting to overpay class counsel in order to settle the case early and to the disservice of the class. Instead, the attorneys' fee award will be determined and awarded by the court. In sum, while not all factors weigh in favor of approving this settlement, the court finds that, on the whole, the settlement is fair and in the best interests of the class.

## ATTORNEYS' FEES

### A.    Attorneys' Fees

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

Because this case is premised on federal question jurisdiction (Doc. No. 1 at 2), the court will apply federal law to the award of attorneys' fees for this settlement. *See Vizcaino v.*

*Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees."); *see also* 10 Fern M. Smith, *Moore's Federal Practice Civil* § 54.171 (2015) ("In cases within the district courts' federal-question jurisdiction, state fee-shifting statutes generally are inapplicable.").  "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Vizcaino*, 290 F.3d at 1047.  The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").  Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55.  Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, class counsel has requested a payment of $75,000 in attorneys' fees, or 30 percent of the common fund.  (Doc. No. 37-4 at ¶¶ 69–71.)  Class counsel does not make a showing that the results here were exceptional,[4] that the litigation was extremely risky, or that the case generated benefits for the class beyond the cash settlement fund.  However, counsel did take the case solely on a contingency fee basis, with no guarantee that any fees would be earned or costs

---

[4]  Class counsel's reference to other cases approving one-third recoveries from a common fund does not support a finding that the results in *this* case were exceptional.  (Doc. No. 37-4 at ¶ 71.)

12

recouped. (*Id.* at ¶ 68.) Additionally, the absence of any objections, in light of the fact that the amended class notice indicated class counsel would seek a 30 percent award, weighs in favor of the appropriateness of this award here. (Doc. No. 28-2 at 3.)

Lastly, the court will conduct a lodestar cross-check to confirm whether a 30 percent award of attorneys' fees is appropriate. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is typically applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting Newberg).

This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017). Since this hourly rate will be used solely for the purpose of cross-checking the percentage of the common fund awarded as attorneys' fees, the court does not attempt to define precisely the appropriate rates for this district. The court recognizes some judges in the Fresno division of the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience);

13

1    *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12,

2    2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per

3    hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F.

4    Supp. 3d 813, 838–40 (E.D. Cal. 2016) (concluding that Fresno division rates are $350 to $400

5    per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for

6    attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with

7    less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL

8    3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys

9    with more than twenty years of experience, and between $175 and $300 for attorneys with less

10   than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL

11   4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for

12   attorneys with less than ten years of experience and $380 per hour for attorneys with more than

13   twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012

14   WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for

15   associates, and $416 and $556 per hour for senior counsel and partners).

16          Additionally, counsels' declarations are sufficient to establish the number of attorney

17   hours worked on this matter. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264

18   (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail

19   neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted

20   by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*,

21   No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)).

22          Class counsel represents that his billing rate in 2016 was $625 an hour, and his billing rate

23   in 2017 is $650 an hour. (Doc. No. 37-4 at ¶ 72.) The court finds this rate exceeds the amount

24   reasonable for attorneys in the Fresno area who, like class counsel, have approximately fifteen

25   years of legal experience. Instead, the court will use a rate closer to the lower end of those

26   previously accepted—$550 per hour—for lodestar purposes. Class counsel also represents that he

27   spent 50.7 hours in connection with the case, including his anticipated appearance at the final

28   approval hearing. (*Id.*)

According to class counsel, attorney Barry Goldstein served as a consultant and the lead negotiator in the mediation of this case. (*Id.* at ¶ 73.) According to class counsel, attorney Goldstein has practiced employment law with a focus on class actions for more than 45 years and "is the most experienced and successful employment class action attorney in U.S. History." (*Id.*) Therefore, class counsel suggests attorney Goldstein's hourly rate for his work on this case should be $865 per hour. (*Id.*) Again, this rate exceeds the maximum amount typically used by Fresno courts for lodestar purposes. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) ("[T]he general rule is that the rates of attorneys practicing in the forum district . . . are used [in calculating attorneys' fees]."); *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1105 (N.D. Cal. Apr. 10, 2008). In consideration of attorney Goldstein's experience, laid out in his declaration (Doc. No. 37-5), the court will use the upper range of hourly rates previously found reasonable, $695 per hour, in calculating the lodestar for him. Attorney Goldstein declares he spent 11.6 hours on this case. (Doc. No. 37-5 at ¶ 11.)

Class counsel indicates that Jala Amsellem is a contract attorney who has been working for his firm for over six years, and has been a litigator for 32 years. (Doc. No. 37-4 at ¶ 74.) Attorney Amsellem's billing rate is $675 per hour. (*Id.*) The court will again reduce this rate somewhat to more appropriately reflect the market rates in Fresno, and will use $600 per hour as the lodestar for attorney Amsellem's work. Class counsel declares attorney Amsellem spent 60.1 hours working on this case. (*Id.* at ¶ 76.)

Finally, Linda Sieger is a paralegal who worked on the case for 68.5 hours, according to class counsel, and bills at a rate of $200 per hour. (*Id.* at ¶¶ 75–76.) This court has previously held that the prevailing rate for paralegals in the Eastern District of California is between $95 and $115 per hour. *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM, 2017 WL 4180497, at *9 n.1 (E.D. Cal. Sept. 21, 2017). The court will apply a rate of $115 per hour here.

Given the foregoing, the court determines that the lodestar amount for cross-check purposes is $79,884.50. This equates to a lodestar multiplier of approximately 0.94. As a negative modifier, this supports the $75,000 award of attorneys' fees in this case. Therefore,

considering the lodestar cross-check and the fact that this case was conducted purely on a contingency fee basis, the court approves an award of $75,000 in attorneys' fees, equal to 30 percent of the common fund.

**B.  Expenses of Class Counsel**

Additionally, class counsel seeks to recover the costs expended on this litigation.  Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  These can include reimbursements for:  "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id*.

Class counsel declares that his firm incurred approximately $7,884.00 in costs related to this case.  (Doc. No. 37-4 at ¶ 78.)  He submits a list of itemized costs showing $7,878.90 in itemized costs for expenses such as mediation fees, travel expenses, postage, photocopying, and filing fees.  (Doc. No. 40 at 29–30.)  The court finds these expenses appropriate, and will award counsel $7,878.90 in costs.

**INCENTIVE PAYMENTS FOR CLASS REPRESENTATIVE**

Plaintiff seeks an incentive payment of $7,500 for his service as a class representative in this action.  While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments.").  Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*,

16

142 F.3d 1004, 1016 (7th Cir. 1998)).  Such awards must be "scrutinize[d] carefully . . . so that they do not undermine the adequacy of the class representatives."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  Thus, incentive awards which are explicitly conditioned on the representatives' support for the settlement, as well as those that are significantly higher than the average amount awarded in settlement, should often not be approved.  *Id.* at 1164–65.  The core inquiry is whether an incentive award creates a conflict of interest, and whether plaintiffs "maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation."  *In re Online DVD-Rental*, 779 F.3d at 943.

As the court noted when it preliminarily approved the settlement, the incentive payment sought here is relatively large considering the total size of the fund and the average recovery each class member stands to recover.  (*See* Doc. No. 34 at 21.)  The award was preliminarily approved because it was "not outside the realm of what has been approved as reasonable by other courts."  (Doc. No. 34 at 21.)  However, the court cautioned at that time that it would be carefully reviewing evidence proffered by plaintiff in support of this award.  (*Id.*)

In this case, plaintiff Goodwin declares that he previously worked for defendant from September 2011 to October 2014 as a maintenance technician and supervisor.  (Doc. No. 37-3 at ¶ 3.)  Plaintiff indicates he reviewed documents produced by defendant, explained certain policies to class counsel, and attended the mediation.  (*Id.* at ¶¶ 7–12.)  He also reviewed and signed the settlement agreement.  (*Id.* at ¶ 14.)  According to plaintiff Goodwin and class counsel, he would have been liable for costs of the suit if defendant had ultimately prevailed, and thus the suit involved substantial risk for him.  (*Id.* at ¶ 16; Doc. No. 37-4 at ¶ 81.)  Plaintiff Goodwin indicates he took three days off work to attend the one-day mediation in San Diego, and incurred costs traveling from Fresno to San Diego in order to attend it.[5]  (Doc. No. 37-3 at ¶ 18.)  He believes he spent approximately 30 to 40 hours assisting with this case.  (*Id.* at ¶ 19.)  Additionally, plaintiff Goodwin agreed to a significantly broader release of liability than did the

---

[5]  Class counsel's itemized list of costs includes expenses such as $402.70 for a "Hotel room for P for 2 nights for mediation" and $344.82 in "Mediation travel expenses for Goodwin (rental car & gas)."  (Doc. No. 40 at 29.)  It therefore appears that if plaintiff did incur travel expenses in order to attend the mediation, he has been reimbursed for at least some of those expenses.

other class members.  (*See* Doc. No. 28-2 at 33–34.)  It appears plaintiff was not deposed during this case and does not risk injury to his employment or reputation by pursuing this case.

The requested incentive payment here represents three percent of the entire common fund,[6] and approximately 4.5 percent of the fund available after attorneys' fees and costs are deducted.  This is a significantly larger portion of the fund than has typically been approved by the undersigned.  *See, e.g.*, *Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, at *9 (E.D. Cal. July 27, 2017) (approving incentive payments totaling a combined 0.5 percent of the common fund); *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2017 WL 2289342, at *9 (E.D. Cal. May 25, 2017) (awarding a $5,000 incentive payment for a $290,000 settlement, or 1.7 percent of the fund); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (awarding $15,000 in total incentive payments from a $4.5 million fund, or 0.33 percent of the fund); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017) (approving incentive payments to two named plaintiffs that, combined, equaled approximately 0.68 percent of the fund); *Taylor v. FedEx Freight, Inc.*, No. 1:13-cv-01137-DAD-BAM, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016) (awarding lowered incentive payment of $15,000, or 0.4 percent of the fund).  Class counsel represented at the final fairness hearing that the average settlement share per class member in this case, including redistribution, would be $509.  Thus, an incentive payment of $7,500 is approximately fifteen times the average settlement share.  The court concludes this is too high of an incentive payment considering the nominal progress of the litigation and the minimal amount of work performed by the named plaintiff.

Given the information in front of the court, an incentive award for plaintiff Goodwin of $3,750, which is equivalent to 1.5 percent of the total fund and is half of the requested award, appears to be more appropriate.  This compensates plaintiff for the time he spent on this case at a

---

[6] Contrary to the assertion in class counsel's declaration, $7,500 is equal to 3.0 percent of $250,000, not 0.3 percent.  (*See* Doc. No. 37-4 at ¶ 79.)  A $750 incentive fee award would reflect 0.3 percent of the settlement fund.

rate between approximately $93 and $125 per hour.  It is also still seven times what the average

class member is receiving as a result of the settlement.  Therefore, the court will reduce the

requested incentive award to $3,750.

**APPROVAL OF FLSA SETTLEMENT**

The complaint in this action also contains claims brought under the FLSA.  Settlement of

collective action claims under the FLSA requires court approval.  *See Jones v. Agilysys, Inc.*, No.

C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014).  "The FLSA establishes

federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by

contract."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69, 133 S. Ct. 1523, 1527 (2013).

Because an employee cannot waive claims under the FLSA, they may not be settled without

supervision of either the Secretary of Labor or a district court.  *See Barrentine v. Ark.–Best

Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05–cv–0279

PVT, 2007 WL 2298046, at *1, n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining

whether an FLSA settlement should be approved.  *See Dunn v. Teachers Ins. & Annuity Ass'n of

Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016).  However, in

this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh

Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide

dispute.  *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th

Cir. 1982); *Selk v. Pioneers Memorial Healthcare District*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal.

2016); *Yue Zhou*, 2007 WL 2298046, at *1.  "A bona fide dispute exists when there are legitimate

questions about the existence and extent of Defendant's FLSA liability."  *Selk*, 159 F. Supp. 3d at

1172 (internal quotation marks and citation omitted).  A court will not approve a settlement of an

action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek,

because it would shield employers from the full cost of complying with the statute.  *Id.*

Once it is established that there is a bona fide dispute, courts often apply the Rule 23

factors for assessing proposed class action settlements when evaluating the fairness of an FLSA

settlement, while recognizing that some of those factors do not apply because of the inherent

differences between class actions and FLSA actions.  *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013).  Having found this settlement to be fair and reasonable under Rule 23, the court therefore looks only to whether there is a bona fide dispute about the existence and extent of defendant's FLSA liability.  As discussed above, the plaintiff conceded at the final fairness hearing that defendant could maintain at least an arguable position that the bonuses paid were discretionary, and therefore did not need to be factored in to an overtime calculation.  Were a factfinder to conclude these bonuses were discretionary, the class would have been able to recover nothing in this action.  Therefore, the court concludes there was a bona fide dispute as to FLSA liability.

## CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for final approval of the settlement and certification of the settlement class (Doc. No. 37) is granted, the settlement class is certified, and the court approves the settlement as fair, reasonable, and adequate;

2. Michael Malk is approved as class counsel, and plaintiff Goodwin is confirmed as class representative;

3. Class counsel's motion for attorneys' fees, expenses, incentive payments, and PAGA penalties (Doc. No. 37-2) is hereby granted, and the court awards the following sums:

   a. Class counsel shall receive $75,000 in attorneys' fees, and $7,878.90 in expenses;

   b. Named plaintiff Goodwin shall receive $3,750 in an incentive payment; and

   c. The parties shall direct payment of 75 percent of the settlement allocated to the PAGA payment, or $3,750, to the California Labor and Workforce Development Agency, as required by California law.

4. All parties are directed to abide by the settlement agreement (Doc. No. 171), including any deadlines or procedures for distribution included therein, and take all necessary steps to complete and administer the settlement in accordance therewith; and

/////

/////

5.  The court retains jurisdiction to consider any further applications arising out of or in connection with the settlement.

IT IS SO ORDERED.

Dated:   **February 22, 2018**

_____
UNITED STATES DISTRICT JUDGE